BANK OF DEFIANCE, Appellee, v. THOS. J. RYAN ET AL., Appellants.

**Mortgages:** FORECLOSURE: APPLICATION OF PROCEEDS.  A debtor has the right to specify upon which of several debts a voluntary payment shall be applied, if promptly done before application by the creditor, but this rule does not apply to the proceeds of mortgaged property; in such cases the creditor may make the application to the mortgage debt.  And where the creditor holds a real estate mortgage and several successive chattel mortgages on the same property securing several notes, pledging the property by each mortgage successively to the payment of each successive debt, two of the notes being secured by the real estate mortgage and one of the chattel mortgages, the creditor has the first right to apply the proceeds of the property so as to afford him the security bargained for; and he may realize on the real estate mortgage in satisfaction of the two notes secured thereby and waive his chattel security therefor in favor of the subsequent chattel mortgages.

**Same:** WAIVER OF AGREEMENT TO MAKE APPLICATION.  The mortgagor and mortgagee in such cases may waive an agreement that the proceeds arising from the first sale shall be applied to the extinguishment of a certain one of the mortgages; and use of the proceeds thus arising for another purpose by permission of the mortgagee amounts to a waiver of such agreement.

**Same:** FORECLOSURE AND SALE: FRAUD.  In the instant case the contention of the mortgagors that the mortgagee was guilty of fraud in the foreclosure and sale of the mortgaged property is not sustained by the record; and it appears that if there was any sacrifice of the property the mortgagors were largely responsible for it.

**Same.**  The mortgagee herein as surety for the mortgagors on a delivery bond in an action of replevin, took possession of the

property involved in the replevin action for the purpose of delivery to the plaintiff in discharge of his liability on the bond; and it is held that he is not chargeable in this action for the value of the property so taken, as a payment on the mortgages in suit.

**Marshaling of assets:** RIGHTS OF JUNIOR LIENHOLDERS. The doctrine of marshaling assets operates in favor of the creditor against the debtor, and is not intended to deprive a secured creditor of the benefit of his security, so far as required to protect his rights: So that, where a mortgagee holds both real and chattel mortgages securing certain debts, and other chattel mortgages securing other debts, junior lienholders, having judgment liens against the mortgaged land, can not compel the mortgagee to first resort to the personal security for satisfaction of the debt secured by both the real and personal security.

*Appeal from Shelby District Court.*—HON. O. D. WHEELER, Judge.

WEDNESDAY, DECEMBER 15, 1909.

THIS is an action to foreclose a real estate mortgage. The debtor defendants are Thos. J. Ryan and H. R. Ryan. The other defendants are junior lienholders. There was a decree for the plaintiff. Defendants appeal.—*Affirmed.*

*Byers, Lockwood & Byers* and *E. S. White,* for appellants.

*Cullison & Robinson,* for appellee.

EVANS, C. J.—The mortgage sought to be foreclosed covers real estate in Shelby County, and was given on May 2, 1902, to secure the payment of two notes of $10,000 and $13,000, respectively. At the time of bringing the suit, the notes bore certain indorsements of payments thereon. The defense interposed was that payments other than those so indorsed had been made upon said notes, or should be deemed to have been made thereon, and that such notes

were thereby wholly or in large part discharged. The basis of this claim of additional payments rests upon the proposition that the proceeds of certain chattel property which came into the hands of the plaintiff were not properly applied, and that they should have been applied upon the notes in suit. The disputed questions of fact therefore all relate to other mortgages than the one in suit and relate to personal property which was covered by such other mortgages. At the same time that the mortgage in suit was given, a chattel mortgage was also given by the same defendants to secure the same notes, and covering substantially all of the personal property then owned by the mortgagors, and the increase. thereof, and the future additions by purchase. This personal property consisted mainly of a herd of pure-bred, short-horn cattle. Afterwards, on September 24, 1902, said defendants became indebted to the plaintiff in an additional amount of $10,000, for which they gave their note and secured the same by a chattel mortgage upon one hundred and sixteen head of three year old steers, purchased from one Branson of Kansas, and upon certain enumerated short-horn cattle. Whether the property included in this latter mortgage was acquired since May 2, 1902, does not definitely appear; but such seems to be the fair inference from the whole record. On January 17, 1903, the same defendants executed another note to the plaintiff for $2,000, and secured the same by a chattel mortgage covering all the property included in the two prior mortgages. This note and mortgage are referred to in the record as the "feed mortgage." The purpose of the note and mortgage was to enable the defendants to draw checks upon the bank for that amount in the purchase of feed for the mortgaged property, and the defendants did subsequently draw their checks for such amount.

On July 15, 1902, said defendants executed a chattel mortgage on some part of their personal property to Fair-

banks, Morse & Co., to secure a note for $640, and the plaintiff became a purchaser of this mortgage after $340 had been paid thereon. On October 20 and October 25, 1902, and on January 12 and March 18, 1903, payments were indorsed on the notes in suit aggregating a little more than $2,000. No question is raised concerning these payments. On January 13, 1903, $1,485 was indorsed as a payment upon the mortgage of September 24, 1902; the same being the proceeds of the sale of property included in such mortgage. On June 13, 1903, the plaintiff's president, L. F. Potter, notified the Ryans that he would have to foreclose his four chattel mortgages, and he took formal possession of all the chattel property on that day. June 24th was fixed upon as the date of the proposed sale, and the requirements of the mortgages were complied with in the manner of notice and in the method of conducting the sale. On June 13, 1903, the Ryans shipped to Chicago eighty-three head of the steers included in the mortgage of September 24th. The proceeds thereof were remitted to the plaintiff, and credited to the Ryans by the plaintiff. The larger part, namely, $5,262, was indorsed as a payment on the mortgage of September 24th, and the balance was applied to the payment of an overdraft of the Ryans. The proceeds of the chattel mortgage sale of June 24, 1903, were applied as follows: "$1,547.50, being the proceeds of property included in the mortgage of September 24th, was applied as a payment upon such mortgage; $2,162.15 was applied as full payment upon the $2,000 "feed mortgage;" the balance remaining over and above expenses, which amounted to $4,000, was applied as a payment upon the $10,000 note in suit. On June 26th the Ryans caused to be served upon the plaintiff a notice directing it to apply all proceeds of the sale of June 24th and all proceeds of the shipment of June 13th upon the two notes in suit herein. The demand made in such notice presents the contention of the defendants herein.

It will be observed from the foregoing statement that, as to the notes in suit, the plaintiff held both real estate and chattel mortgages as security. As to the notes subsequently executed, it held chattel mortgages only. If the plaintiff had applied the proceeds of all the personal property upon the notes in suit, it would have been left without any security as to the subsequent notes. This would have released the land to the Ryans to the extent of such payments on the notes in suit. The Ryans are insolvent. The defendants other than the Ryans are junior lien-holders on the land. They are also garnishers of the plaintiff under execution. As junior lienholders upon the real estate, they contend that the plaintiff should be required in equity to resort first to its chattel security for the payment of the notes in suit, and they invoke the rule relating to marshaling of assets. The Ryans and the other appealing defendants join in the appeal, and they are represented here by the same counsel and by the same brief. To avoid confusion of statement, we will give our first consideration to the contentions of the defendants Ryan.

I.   The rule of marshaling of assets can have no application to defendants Ryan. Their contention, however, is that they had the absolute right to specify the notes upon which payment should be applied. That this contention is correct as to voluntary payments is clear; but even then the burden is upon the debtor to make such specification promptly before the application is actually made by the creditor. This rule, however, is not applicable to the application of the proceeds of sale of mortgaged property. *Wyland v. Griffith,* 96 Iowa, 28. The creditor has the undoubted right to apply the proceeds of sale of mortgaged property upon the mortgage debt. This latter proposition, however, does not quite reach this case, because the plaintiff held four successive mortgages on the same property, each of which secured different indebtedness. The mort-

1. MORTGAGES: foreclosure: application of proceeds.

gagor pledged the property by each mortgage successively to the payment of each successive debt. The manifest purpose of the mortgages was to secure the debts. The primary right is therefore with the creditor in such a case to apply the proceeds in such a way as to afford him the security bargained for. A court of equity has full power in such a case to protect either party against an inequitable application. The defendants having executed the real estate mortgage in suit to secure the notes described therein, the plaintiff had a right to realize thereon, and to waive its chattel security in favor of the subsequent chattel mortgages. Such a course carries out the manifest intent of the parties and presents no want of equity.

II. A special reason is urged why the plaintiff should not be permitted to apply any part of the proceeds of the mortgage sale of June 24th upon the $2,000 "feed mortgage." It is claimed that this mortgage was in fact paid on a prior date. The facts upon which such claim is based are that on March 19, 1903, certain of the cattle covered by such mortgage were shipped to Chicago, and more than $2,100 was realized as proceeds of the sale, and that the same was remitted to the plaintiff. It is also claimed by the defendants that, at the time the mortgage was made, it was agreed that it should be paid out of the proceeds of the first shipment of cattle, and that this was such first shipment. The argument is that such note and mortgage should therefore be deemed paid, whether such proceeds were in fact applied thereon or not. Assuming an agreement, as claimed by defendants, that such mortgage should be paid out of the proceeds of the first cattle to be sold, then it was doubtless true that, upon receipt of such proceeds referred to, the defendants could have demanded that the same be applied upon such note, and that, on the other hand, the plaintiff could have demanded that it be so applied. It is doubtless true, also, that, even though such proceeds were not actually

*2. SAME: waiver of agreement to make application.*

applied upon the mortgage in question, equity will regard as done that which ought to have been done; but the parties were in no manner precluded from mutually waiving such agreement if it was made.   Instead of applying such proceeds upon the mortgage, the defendants desired, and the plaintiff permitted them, to check it all out.   This was a clear waiver of the agreement if there was one.   The argument of the defendants at this point is that such agreement was self-executing, so to speak, and that, at the moment such proceeds reached the hands of the bank, the mortgage was thereby discharged by operation of law, and that the subsequent checking by the defendants ′ created only an unsecured overdraft.   This position is not tenable. The law is not so technical as to give support to this argument.   We may say, also, that the fact of such a prior agreement as appellants rely upon is not satisfactorily established.   Appellants rely upon the testimony of H. R. Ryan to that effect.   This particular testimony was given by this witness when called by the plaintiff in rebuttal. He had previously testified in his own behalf: "I don't know whether I agreed to pay this mortgage out of the stock or not.   I was not there at the time it .was given."

III.   It is next argued that the plaintiff's president, L. F. Potter, was guilty of some fraud in the conduct of such sale.   The substance of this contention is that he said

3. SAME: to the defendants he would have to foreclose
foreclosure
and sale: his mortgage and change the title of the
fraud.
property because outside creditors were making so much trouble, and that, after he had changed the title by such foreclosure, he would have another sale in the fall of the year, and the Ryans could take care of the stock on the farm, and that if he did well he would' do right by them.   It is also claimed that the property was intentionally sacrificed, and that much of it was bought in by Potter.   We can not go into a discussion of the details of the evidence.   The charge of fraud is not sustained.

If the property was sacrificed to any extent, the defendants were largely responsible for it. The plaintiff not only complied with the technical requirements of the law as to foreclosure proceedings, but it advertised the sale in newspapers and in posters, and by writing letters to stockmen in other states. A crowd, variously estimated at from three hundred to one thousand, attended the sale, and a number came from other states. The night before the sale, the Ryans notified Potter that they would not furnish the pedigrees of the stock to proposed purchasers at the sale, and the sale was conducted without such pedigrees. It is conceded by them that it would be impossible to realize the approximate value of the best-bred stock without such pedigrees. Much of the stock brought fancy prices as it was, as compared with ordinary prices of grade cattle. If they should have brought more, the principal responsibility for the failure must be laid at the door of the mortgagors. The defendants testified to values of much of the stock to be three times as great as that which it sold for; but such valuation was upon the assumption that pedigrees were furnished. Both admitted that they could fix no value upon such stock if offered for sale without certified pedigrees. One cow that was bid in by Potter for $500 was said to be worth $1,500. Potter turned her out to the Ryans in exchange for fifteen certificates of pedigree of other stock which he had purchased. Two cows were sold for $50 a-piece which were claimed to be worth $800 and $1,000, respectively; but these were both bid in for the Ryans themselves by their own attorney, and no other bids were made upon them because they were claimed as exempt, and the defendants got them both. Whatever Potter may have intended to do, and whatever he may have said he would do as to having the Ryans take care of the stock, and as to having a sale later in the fall, the Ryans themselves made such a course quite impracticable by their own conduct. The foreclosure of a chattel mortgage is usually a

calamity, and humane creditors are very loath to resort to such proceedings. Nevertheless the plaintiff had the right to resort to them. Inasmuch as it conformed to the law, we have no power of condemnation.

IV. One other item requires consideration. It is claimed by the defendants that Potter bid off for $1,705 a bull known as "Master of the Ring," and that he should be charged therewith, and that the amount of such bid should be applied upon the notes in suit. On behalf of the plaintiff it is denied that such a bid was made, and the trial court found with the plaintiff upon that question. The facts appearing from the evidence are that such animal was bought by the Ryans from one Gerlaugh, who, upon discovering the insolvency of the Ryans, brought an action of replevin therefor. Instead of permitting the animal to be taken under the writ of replevin, the Ryans put up a delivery bond under the statute with Potter and one McCord as sureties. Gerlaugh prevailed in the suit; the jury finding the value of the animal to be $1,705. Thereupon Gerlaugh elected to take a money judgment, supposing, possibly, that the delivery bond was security for such judgment. For the benefit of himself and his co-surety, Potter took possession of the animal in question and tendered such possession to Gerlaugh in pursuance of his obligation under the bond. It was held in this court that such was the measure of his liability under the delivery bond. *Gerlaugh v. Ryan,* 127 Iowa, 226. He has maintained such possession ever since. Whether he is bound to keep his tender good to Gerlaugh, or whether Gerlaugh may yet avail himself of the possession of Potter, are questions which are not involved in the issue of this case. Indeed the pleadings in this case have tendered no issue on the question. It does not appear either from pleading or evidence that the bank was in any manner bound by the suretyship of Potter, or that it is in a position to avail itself of Potter's possession. In view of this

4. SAME.

state of the pleadings and the evidence, we think this item should be wholly reserved from the adjudication. This is doubtless the legal effect of the finding of the trial court. We call specific attention to this feature in order to avoid misunderstanding later in any future adjustment of the rights of the parties in relation to such animal.

V. Turning now to a consideration of the rights of the junior lienholders, what we have already said is practically conclusive against them. No legal fraud was perpe-

5. MARSHALING OF ASSETS: rights of junior lien-holders.

trated either in the taking or foreclosing of such mortgages. The rights of the junior lienholders are therefore no greater than those of the mortgagors. All but one of the defendant lienholders obtained their judgments on June 26, 1903, and later. One defendant filed a transcript of a judgment in Shelby County on May 28th. These defendant lienholders claim liens on the land, on the one hand, and, on the other, they claim to hold personal property and the proceeds thereof in the hands of the plaintiff by virtue of garnishments served by them upon plaintiff under execution. As judgment holders having liens upon the land, they claim the right to require the plaintiff to resort to its personal security for the payment of these notes. If the plaintiff had first resorted to the personal property for payment of the notes in suit, the defendant creditors, as garnishers, could as appropriately have required it to resort first to the real estate. There is no room here for the application of the rule as to marshaling assets. If some third party had held the mortgages of September 24th and January 17th for $10,000 and $2,000, respectively, such holder would have had as much right to require the plaintiff to first resort to its real estate security, as the judgment lienholders would have to require it to resort to the chattel security. The plaintiff, being the owner of such subsequent mortgages, has as much right in the premises as a third party would have. The rule as to marshaling assets

operates in favor of a creditor as against the debtor. It is not intended to deprive any secured creditor of the benefit of his security so far as it may be necessary for his protection. If we should think of the four mortgages under consideration as held by four different mortgagees, their equitable rights as to the marshaling of assets as between each other were already fixed before the defendant creditors became lienholders upon the land. Those rights could not be destroyed by the acquisition of subsequent judgment liens against the land by the defendants.

The rule invoked by the defendants therefore operates against them.—*Affirmed.*