PATRICK FARRELL, Appellant, v. JAMES WALLACE and MAGGIE WALLACE, Appellees.

Contracts: REFORMATION: EVIDENCE. Where an agreement is reduced
1 to writing and signed by the parties it is presumed to contain their understanding as to all matters recited therein, in the absence of fraud or mistake. Thus where plaintiff signed a mortgage with knowledge that it was to run for the time and at the rate of interest stated therein, he was not entitled to to have the instrument reformed so as mature at a different date with interest payable on a different date, solely on the ground that defendant had so stated to him previous to the execution of the mortgage.

Constructive trusts: CREATION: EVIDENCE. The fact that a mortgagee
2   induced the mortgagor to mortgage his property for the payment of
his debts and then retained a portion of the proceeds as a commis-
sion on the loan will not give rise to a constructive trust; as such a
trust arises by operation of law out of fraud, and as the original
execution of the mortgage was not tainted with fraud and plaintiff
had an action at law for the commission retained no trust was shown.

*Appeal from Woodbury District Court.*—HON. F. R. GAYNOR,
Judge.

THURSDAY, OCTOBER 23, 1913.

PROCEEDING in equity for an accounting and for the
establishing of a trust in real estate. From a decree dis-
missing plaintiff's bill, he appeals.—*Affirmed.*

*Alfred Pizey and Martin Neilan,* for appellant.

*O. D. Nickle and Griffin & Page,* for appellees.

WITHROW, J.—I. By a proceeding in equity the appellant
seeks for an accounting and to have a constructive trust
established in his favor in certain real property in Sioux City,
the legal title to which is now in Maggie Wallace, one of the
appellees.

The appellant, Patrick Farrell, was in 1906 the owner of
the real estate sought to be affected by these proceedings, upon
which there were incumbrances. Farrell was at the time
indebted in other ways. James Wallace, one of the appellees,
suggested as a means of caring for all of his obligations that
Farrell execute a mortgage for $1,500, the proceeds of which
should be used in taking up the indebtedness and removing
the prior incumbrances, the remainder to be paid to Farrell.
After several interviews Farrell agreed to the plan, and on
June 15, 1906, the appellant executed a mortgage in favor of
one Pierce, a brother-in-law of Wallace, to secure an indebted-
ness of $1,500, payable in three years, with interest at 8 per

cent., payable semi-annually. Default having been made by Farrell in paying interest, foreclosure proceedings were commenced, and on September 4, 1907, Farrell, the defendant in the foreclosure suit, having entered no appearance, judgment and decree were entered against him by default, he having had notice of the proceedings. In due time, there having been no redemption, and the certificate of sale having been assigned by Pierce to Mrs. Wallace, sheriff's deed was issued to her, and at the commencement of this action she was the holder of whatever title passed by such conveyance.

It is the claim of the appellant that the mortgage for $1,500 was executed by him upon the understanding with Wallace, who conducted the transaction, that it should be to him and for a term of five years, and that no interest would be required until the expiration of that period. It also is claimed that Wallace did not render a true accounting of the proceeds of the loan; that payment was made of indebtedness secured by a mortgage which had been paid by him prior to the execution of the $1,500 note and mortgage; that in the settlement with Wallace for the proceeds of the loan, so far as there was a settlement between them, Wallace withheld the sum of $100 as a commission for his services in effecting the loan and taking care of the different claims; and that such had not been agreed to between the parties. It is further claimed by Farrell that he was deceived and did not know that he was executing a mortgage to Pierce instead of Wallace and that had he known it he would not have done so. He claims that a confidential relation existed between himself and Wallace, and that Wallace abused such relation and in procuring the mortgage deceived appellant, who could neither read nor write. He also claims that the transaction with Pierce was merely a subterfuge adopted by Wallace to avoid liability to appellant; that the note and mortgage, although in the name of Pierce as mortgagee, were in fact owned by Wallace or his wife; and that Pierce, although named as payee and mortgagee, had in fact no interest in the trans-

action.  Appellant also claims that Maggie Wallace, the wife of James Wallace, has no interest in the property, and that the assignment of the sheriff's certificate to her by Pierce, and the conveyance to her by sheriff's deed, were procured by James Wallace for himself and in his own right, and that the title of the property has been alienated from him through fraud on the part of James Wallace.  He prays that he may have an accounting for the rents of the property received by the appellees and for other items, and that upon accounting the amount due him be impressed upon the property as a constructive trust.

In answer the appellee James Wallace denies that there was any fraud in the transaction.  Denies that he paid off any loan or indebtedness which it had not been agreed that he should pay.  Denies that he represented that the mortgage would be for five years, or that no interest would be due before the maturity of the indebtedness.  He avers that the mortgage was read over to Farrell before it was signed by him.  Mrs. Wallace in her answer pleaded her right under the sheriff's deed, the procuring of assignments of certificates of sale by the sheriff, under other claims, and the merging of the same in deeds, and also pleads a former adjudication, under the foreclosure proceedings against the appellant.

II.  A study of the record in this case is productive of an inference that in the transaction with Farrell the appellee Wallace may have in some respects been guided more by a purpose to benefit himself than to serve Farrell, but this cannot be determinative of the case.  Farrell was involved in indebtedness, although its total was considerably less than the value of the property covered by the mortgage, and to escape from immediate pressing conditions he adopted the plan suggested by Wallace.  This may or may not have been prompted by unworthy motives, but whatever the motive, and whatever the result, there remains to be determined whether the record of the facts is sufficient to sustain the claim of the appellant as made in his pleadings filed in this case,

III. The appellant testified as to an agreement between himself and Wallace as to the period of the loan, five years, and as to the time when interest should be paid. One O'Malley testified as to having heard a conversation between Farrell and Wallace, before the transaction was closed, in which he claims Wallace stated that the loan would be for five years and that he (Wallace) would take care of the property for that period. This is all the evidence introduced by appellant upon the question as to the time the loan should continue or the payment of interest, and this is denied by Wallace, who testified that he told Farrell the loan would run for three years, with interest at 8 per cent., payable semiannually.

1. CONTRACTS : reformation: evidence.

The evidence shows that at the time of the execution of the note and mortgage they were read over to Farrell by the notary public, in the presence of Wallace and one Reeves; that no objection was made to any of the terms; but that Farrell asked how often the interest came and was told every six months, and in reply he (Farrell) said the rent would take care of that. Farrell signed both instruments, by mark duly witnessed.

Stating the elementary rule that a contract in writing is taken as representing the true agreement between the parties, unless procured by fraud or mistake, it is quite evident from this statement of the evidence that there is a failure to show in that satisfactory manner required to impeach an instrument that the note and mortgage were induced by fraud; and in the absence of such a showing they must be held to represent the agreement of the parties upon all matters included in them. *Schofield v. Blind,* 33 Iowa, 175; *Smith v. Sherman,* 113 Iowa, 601; *Detrick v. Patterson,* 159 Iowa, 460. Whatever may have been the talk prior to the execution of the note and mortgage as to their terms, and giving to the testimony on the part of the appellant the full weight claimed by him, it is clear from the record that, at the time the mortgage was executed, the appellant had the provisions of it

made known to him. He does not claim to the contrary but says, ''I believed when I signed the mortgage that Wallace would pay off the debts and carry the property for five years, and I would not have signed it if I thought he would not have done it.'' This falls far short of the degree of proof necessary to entitle one to reformation of the contract or to defend against it on account of fraud. It states no more than the belief of the appellant that, independent of the written provisions of the contract, Wallace would do in respect to the note and mortgage certain acts which were different from their written terms. Clearly this cannot overcome the effect of the solemnly executed instrument.

IV. There is dispute between the parties as to what indebtedness Wallace was authorized to pay from the proceeds of the $1,500 loan. It is the claim of the appellant that he agreed to pay what is designated as the Clark mortgage of about $400, and that there was no agreement or understanding that he should pay the Fuller mortgage, which was paid by Wallace, although the appellant claimed that he had paid it. Appellee Wallace denied that he agreed to pay the Clark mortgage indebtedness. It appears that the Fuller mortgage was a lien on the real estate covered by the mortgage given to Pierce, such lien being adjudged as junior to the lien of the White mortgage which was foreclosed, and sale made thereunder for $586.69. The proceedings for its foreclosure were commenced November 18, 1907, which was after the commencement of the proceedings in the Pierce foreclosure, and the decree in the White case recited that Fuller was a junior lienholder. Aside from the statement of appellant that the Fuller mortgage was paid by him, there is no proof of the fact, either by way of the canceled papers, receipt, or other evidence of payment. On the contrary, Wallace testifies that he was directed by Farrell to pay the Fuller loan. After the execution of the $1,500 note and mortgage, Wallace called upon Farrell for a settlement and exhibited a statement of his disbursements. Included in them was an item of $353.60

to satisfy the Fuller mortgage, and other items which with $100 commission claimed by Wallace, and checks to Farrell for $411.49 covered the entire amount. Farrell employed as his attorney to look after his interests in the settlement O. D. Nickle, who is one of the attorneys for the appellees. It appears that the only objection at that time made by Farrell was as to the claim of Wallace for $100 as a commission, and that as a conclusion of the matter Nickle procured from Wallace for Farrell a check for the amount determined to be due. Farrell states the check was for about $250. Included among the checks amounting to $411.49 received by Farrell was one for $271.49, and this we must assume was the final payment to which Farrell referred, as the remaining $140 paid to him was in three different checks, and no other payment so nearly meets his statement of "about $250." The closing of the transaction, as thus made, while not pleaded as a settlement, is important as evidence throwing light upon the real understanding of the parties. Aside from the disputed $100 for commission, it appears that the $1,500 was entirely disbursed in the payment of Farrell's indebtedness and in cash payments to him. It did not pay all indebtedness against the property, as the White mortgage was foreclosed, and sheriff's deed finally issued under such proceedings to Mrs. Wallace.

If Wallace had not the right to withhold the amount claimed by him as commission, recovery of such is not made the basis of any claim in appellant's petition, which seeks an accounting for rents and profits, insurance money, and damages awarded to the holder of the title because of a viaduct which had been built by the city, and as to such claims it appears from the evidence that they arose after appellant's title had been divested from him. A constructive trust could not be held to be created in the premises, as prayed by the appellant, because of the commission claimed. Such a trust arises by operation of law, and fraud, actual or implied, is its essential element. 39 Cyc. 169. We have found that as to the original

2. CONSTRUCTIVE TRUSTS: creation: evidence.

transaction there has been a failure to establish fraud.  In the absence of such proof, a constructive trust cannot be held to have arisen in the property.  Without the right to such relief, it follows that, whatever may be the right of Farrell to a personal claim against Wallace, it cannot be effective in this proceeding.

V. What we have above given as our conclusion renders inquiry unnecessary as to the good faith of the transaction between Wallace and Pierce and Mrs. Wallace, and also as to the question of former adjudication.

The decree of the trial court is *Affirmed*.

WEAVER, C. J., and DEEMER and PRESTON, JJ., concur. GAYNOR, J., taking no part.