C. M. Frink, Appellee, v. Commercial Bank of Emmetsburg et al., Appellees; Metropolitan Bank of Saint Paul, Appellant.

**TRUSTS: Constructive Trusts—Nonpermissive Law Action.** A plaintiff may not, by allegations in a petition at law, (1) declare a constructive trust in a certificate of deposit to which he has never had title, (2) base thereon an allegation of ownership, and (3) ultimately accomplish by the verdict of a jury that which is preeminently for a court of equity to decree.

**TRUSTS: Constructive Trusts—Good-Faith Holder For Value.** The victim of a fraud-induced contract who borrows of a bank the money necessary to meet the terms of his contract, and before discovery of the fraud directs the banker to pay the money to the wrongdoer, may not, after such payment is made in the form of a certificate of deposit, negotiable or otherwise, follow said certificate, either at law or in equity, and be declared the owner thereof, against a good-faith holder for value and without notice of the fraud.

**BILLS AND NOTES: Negotiability—Payment ''in Current Funds.''** *Arguendo,* it is assumed that a certificate of deposit, otherwise negotiable, is rendered nonnegotiable by a provision calling for payment ''in current funds.''

**NEW TRIAL: Grounds—Erroneous Trial Theory.** The trial of a cause on an erroneous theory is not ground for new trial in favor of the one who induced such erroneous trial.

**BILLS AND NOTES: Negotiation—Irregular Indorsement.** The fact that a party obtained a certificate of deposit through an irregular indorsement becomes quite immaterial when it is made to appear that he is the actual good-faith owner of said instrument for value, and without knowledge of the fraud out of which the instrument arose, and when it further appears that his rights are not dependent on the question whether the instrument is negotiable or otherwise.

**NEW TRIAL: Discretion—Abuse of Discretion.** No discretion exists to grant a new trial to a party on a record affirmatively demonstrating that the party cannot recover in any proceeding.

*Appeal from Palo Alto District Court.*—James De Land, Judge.

JANUARY 16, 1923.

REHEARING DENIED MAY 15, 1923.

THIS is an action at law, to recover a money judgment against defendant Commercial Bank, as a remedy for fraud perpetrated on plaintiff, not by said defendant, but by one not a party to the action. The theory of recovery is that the funds obtained from plaintiff by the wrongdoer are on deposit in this defendant bank, the deposit being evidenced by a certificate of deposit, payable to the wrongdoer as payee; that the plaintiff gave notice to such wrongdoer of his rescission of the fraudulent contract pursuant to which the wrongdoer obtained such funds; and that the plaintiff is, therefore, the owner of such funds so deposited. The Commercial Bank admitted the deposit, and impleaded the Metropolitan Bank of St. Paul as the present holder of the certificate of deposit. The latter bank appeared, and set up the certificate. It alleged that it purchased the same in good faith, for value, and prayed judgment thereon, against the maker bank. The verdict of the jury was for the Metropolitan Bank. On motion of plaintiff, the verdict was set aside. The Metropolitan Bank appeals.—*Reversed.*

*McCarty & McCarty* and *Charles H. Weyl,* for appellant.

*E. A.* and *W. H. Morling,* for appellee.

EVANS, J.—I. The pleadings are complicated and prolix. The material facts which the evidence tended to prove are comparatively simple, and, as an aid to brevity, these may be first stated, rather than the issues.

1. TRUSTS: constructive trusts: nonpermissive law action.

In November, 1919, the plaintiff, induced by fraudulent representation, executed a large number of notes to the Midland Packing Company, pursuant to a subscription for corporation stock. One of these was for $6,250. This note was taken by the packing company as the equivalent of cash which the plaintiff had promised to pay. Immediately thereafter, this note was offered for sale to the Commercial Bank of Emmetsburg. Sanders, the cashier of the bank, immediately interviewed the plaintiff, and advised him

that the bank was not willing to buy his paper from the packing company, but that it would loan to him the amount of such note and take his promissory note therefor direct to the bank, and that he would take up and cause to be canceled the note of the plaintiff held by the packing company. This arrangement was agreed to, and was later carried out. The plaintiff executed his note to the Commercial Bank, which delivered to him his note held by the packing company, which the bank had taken up pursuant to its arrangement with the plaintiff. The bank paid to the packing company the sum of $5,500. This sum was represented by a certificate of deposit, due in one year from date, at 4 per cent interest, issued by the Commercial Bank to the Midland Packing Company as payee, and dated November 21, 1919. Whether the Midland Packing Company received the money from the bank and thereupon deposited it, or whether the certificate of deposit represented the form of payment of the plaintiff's note, is not entirely clear, it being stated both ways in the evidence on behalf of plaintiff; nor do we deem it very material. In December of the same year, the Metropolitan Bank of St. Paul purchased the certificate from the Midland Packing Company through a broker, and did so in good faith, for value, and without notice of any fraud, as its evidence tended to prove. Some months later, the plaintiff first discovered that he had been defrauded by the Midland Packing Company, and he served upon such company a notice of rescission. All of this occurred after the Metropolitan Bank had acquired the certificate of deposit. On November 20, 1920, the plaintiff brought an action at law against the Commercial Bank, as the defendant. He also named the Midland Packing Company as defendant, but does not appear to have brought it into court by any service. In his petition, he alleged the fraud of the Midland Packing Company and the payment of his note to such packing company, and further alleged that the money thus collected from him by the packing company was on deposit with the defendant Commercial Bank, and that said deposit was a trust fund, held for the use of the plaintiff. He prayed only for a money judgment for $6,250 against the Commercial Bank. He alleged no fraud nor other form of liability as against the Commercial Bank. His action was apparently a friendly suit

against the Commercial Bank, and the pleadings of the Commercial Bank were likewise friendly as to the plaintiff. The Commercial Bank filed its answer and a bill of interpleader. It admitted that the money collected from the plaintiff by the Midland Packing Company for the payment of the plaintiff's note was on deposit, and evidenced by an outstanding certificate of deposit, and that the Metropolitan Bank of St. Paul had possession of and claimed to own the certificate. It prayed that the Metropolitan Bank be interpleaded, and that said bank and plaintiff be required to litigate, as between themselves, their conflicting claims to such certificate of deposit. The Metropolitan Bank was duly served with notice, pursuant to which it appeared, and set up its certificate of deposit and averred its purchase thereof for value, in good faith and without notice, and asked a judgment thereon, as against the Commercial Bank. Thereafter, the plaintiff amended his petition, and named the Metropolitan Bank as a party defendant, and reaverred the fraud of the Midland Packing Company and the notice of rescission on his part. He also averred his ownership of the funds alleged to be on deposit in the Commercial Bank, and alleged that the Metropolitan Bank had no right, title, or interest whatever thereto. He made no affirmative allegation as against the Metropolitan Bank. He also filed an answer to the cross-petition of the Metropolitan Bank, wherein he denied that the Midland Packing Company had ever had any right, title, or interest in any of the funds represented by such certificate, and denied that the Metropolitan Bank was a bona-fide purchaser of the same, for value, before maturity.

There is no claim by plaintiff in his petition that the Commercial Bank was cognizant of any fraud in the transaction of November 21, 1919, whereby it took the plaintiff's note and issued its certificate of deposit to take up plaintiff's previous note held by the Midland Packing Company, and whereby it delivered such canceled note to the plaintiff. Nor does the evidence disclose any fraud in that transaction, except as it operated as a continuance of the original fraud of the Midland Packing Company. There is no claim in plaintiff's petition that the Commercial Bank breached its contract with him in applying the proceeds of the loan to the cancellation of the note held by

the Midland Company. Such action on the part of the Commercial Bank was strictly pursuant to the agreement between it and the plaintiff.

In view of this state of the pleadings and of the facts upon which they are predicated, it becomes important first to inquire what remedies were available to the plaintiff when he discovered the fraud that had been perpetrated upon him by the Midland Packing Company. Manifestly, he had a remedy at law, however inadequate. Manifestly, also, he had a more adequate remedy in equity. He could have sued the Midland Packing Company at law for damages. A judgment in such an action would have been collectible under general execution, and without any reference to any particular fund or to the identity of any fund created as a fruit of the fraud.

2. TRUSTS: constructive trusts: good-faith holder for value.

In order to reach the particular fund on deposit in the Commercial Bank, he could have sued out an attachment in his action at law, and could have reached the fund by garnishment, provided that it still remained the property of the Midland Packing Company.

Did he have a cause of action at law against the Commercial Bank? If so, upon what ground was it predicated? There was neither fraud nor breach of contract, express or implied, on the part of the Commercial Bank. Not only was there no breach of contract on the part of the Commercial Bank, but the contract between it and plaintiff had ceased to be executory, and had become fully performed by the bank, so far as the sum of $5,500 was concerned. It had paid this sum to the Midland Packing Company by entering into a new contract with the Midland Packing Company, whereby it bound itself to the obligations of the certificate of deposit. The broad allegation of the petition is that this defendant, Commercial Bank, had the possession of plaintiff's money. As we shall presently see, this allegation was a mere conclusion. It had no support by any facts pleaded or proved, except so far as the conclusion was predicated upon equitable ground and upon the right to equitable relief. When the plaintiff executed and delivered his note to the Commercial Bank, he had the right either to demand payment of the proceeds of the loan to himself or to direct their

payment to someone else. This right of plaintiff's imposed a corresponding obligation upon the loaning bank, but it did not transfer from the bank to the plaintiff the legal title to any particular fund or funds. For a breach of its obligation, the bank would have been liable to personal judgment in an action at law. But as between plaintiff and the bank, no fund was ever set apart or created as an identifiable entity, legal title to which would pass to the plaintiff. It was only when the bank performed its agreement with the plaintiff, and entered into a new contract with the Midland Packing Company whereby it issued its certificate of deposit, that any identifiable entity was created; and this entity was the certificate of deposit. The plaintiff could not recover on that certificate in an action at law against the Commercial Bank, for the simple reason that he was not the payee thereof nor the transferee thereof nor the owner thereof, in any legal sense. Whatever right he had thereto was purely equitable, and was enforcible only as equitable relief. The only remedy at law, therefore, available to plaintiff as against the Commercial Bank was to proceed against it as a garnishee, pursuant to statutory attachment or execution. This remedy was not invoked, for the good reason, doubtless, that, because of the transfer of the certificate, it would have been of no practical avail.

We turn now to the query, What equitable remedy was available to the plaintiff? Briefly stated, where property has been acquired by fraud, equity, at the suit of the injured party, will impress a constructive trust upon such property or its product in his favor, and against the wrongdoer, whenever such property is identifiable and traceable, either in its original form or in its product or substitute, whether such property, product, or substitute be in the form of a fund or credit or other identifiable property. Not only will equity impress a trust upon such property while it is in the hands of the wrongdoer, but in the event of prior transfer by the wrongdoer, equity will trace the property, if possible, through whatever mutations, and will impress a trust thereon in the hands of a third party, unless he be a good-faith purchaser for value, without notice. It is an important limitation upon this remedy that, when the property has passed into the hands of a bona-fide purchaser for value,

without notice, equity will not impress a trust thereon in the hands of such innocent third party. A few excerpts from the texts will be a sufficient indication of the state of the authorities on that question.

"This universal rule forms the protection and safeguard of the rights of the beneficiaries in all kinds of trust; it enables them to follow trust property,—lands, chattels, funds of securities, and even of money,—as long as it can be identified, into the hands of all subsequent holders who are not in the position of bona-fide purchasers for value and without notice; it furnishes all those distinctively equitable remedies which are so much more efficient in securing the beneficiary's rights than the mere pecuniary recoveries of the law." 3 Pomeroy's Equity Jurisprudence (4th Ed.), Section 1048.

The rule of the authorities as to equitable jurisdiction has been stated as follows:

"B. The law is well settled that a court of equity has jurisdiction, upon the application of persons interested, of all questions relative to the establishment, enforcement, and protection and preservation of a trust on real or personal property. This jurisdiction, particularly in case of a strict trust, is original and inherent in a court of equity, and in some states it is held that it is exclusive, except in so far as a court of law is given jurisdiction by statute or by rules of court. In other states, however, it is held that a court of equity has jurisdiction to enforce a trust only where there is not an adequate remedy at law." 39 Cyc. 588, 589.

Also:

"C. Except where a particular remedy is provided by statute, the proper form of remedy to establish and enforce a trust, as a general rule, is a suit in equity, and not an action at law, or a summary proceeding. Thus a suit in equity is the proper remedy to compel a trustee who refuses or neglects to carry out the terms of the trust to execute the same, or to compel him to account for the trust funds or property. So in case of a resulting or constructive trust, the *cestui que trust's* remedy for a breach of the trust is in equity, and he cannot maintain an action at law against the trustee for money had and received, nor can he establish the trust under exceptions to a sale

of the property by a trustee for the benefit of creditors of the holder of the legal title.'' 39 Cyc. 570, 571.

''B. It is a well settled rule that a *cestui que trust* has the right in equity to follow and recover, or impress the trust upon, the trust fund or property which has been wrongfully diverted, into whatsoever form or hands it may come, so long as it may be distinctly traced and identified, until it comes into the hands of a bona-fide purchaser for value, without notice, or the rights of innocent third parties have intervened, or until the means of ascertaining the property fails. The general proposition is maintained that, if any property in its original state and form is impressed with a trust, no change of that state and form can divest it of such trust or give the trustee converting it or those who represent him in right, not being bona-fide purchasers for value without notice, any more valid claim in respect to it than they had before such change; and it is immaterial whether the property with which the trust funds are mingled is money or whether it is bills, notes, securities, lands, or other property.'' 39 Cyc. 528, 529.

''b. The right to follow trust property in the hands of a third person, and impress the trust thereon, ceases when the property comes into the hands of one who stands in the position of a bona-fide purchaser for value without notice, as where the legal title to the property comes into the hands of one who acquires it for a valuable consideration, without notice of its trust character, including a purchaser without notice from a purchaser with notice; or where, although he has notice of the trust, he acquires it from one without notice. And in some jurisdictions it is expressly provided by statute that an implied or resulting trust cannot be enforced against a purchaser for value and without notice of the trust.'' 39 Cyc. 559, 560, 561.

The foregoing excerpts from the text are fully sustained by the authorities upon which they are based. Nor is there any material conflict in the authorities on the question here considered.

It will be seen from the foregoing that the creation of a constructive trust as a remedy for fraud is one pre-eminently of equitable jurisdiction.. The remedy at law is limited to the recovery of personal judgment or to a judgment *in rem*, pur-

suant to statutory process. The equitable remedy is more specific and penetrating, and enables the injured party to identify and seize particular property as the fruits of the fraud, and to do this without statutory process, and to disregard and set aside the legal title of third parties, if it be tainted with fraud.

The plaintiff chose not to commit himself to the equity jurisdiction, and not to pray for equitable relief. Under the evidence, equitable relief offered him the best remedy. To have prayed it, however, would have cost him the right of trial to the jury. He chose the latter alternative. This choice has resulted in a confusing record. One of its confusions is that the pivotal allegations of plaintiff's petition are predicated upon equitable grounds and upon the right to equitable relief, though no such relief is prayed. The case was tried on the theory that the plaintiff could, by allegation in a petition at law, declare a trust and predicate thereon an allegation of ownership of the certificate, without any aid of equitable relief. The plaintiff alleged himself to be the owner of the certificate. He was such only in an argumentative sense, and only in the sense that the facts stated by him would entitle him to the equitable remedy of impressing a constructive trust in his favor. Without the exercise of such equitable jurisdiction by the court, the plaintiff was not the owner of the certificate. Not only was the legal title thereof held by another, but such legal title never had been held by the plaintiff at any prior time. He could not maintain an action at law thereon, because its very terms would defeat him. On the face of the instrument, the Commercial Bank was liable to the transferee thereof. This right of the transferee's was subject to equitable interference, under proper issues and prayer for relief. Until such equitable interference was had, the Commercial Bank had no defense available to it, as against the transferee. To put it briefly, the petition of the plaintiff sought to create by the verdict of a jury a constructive trust upon a certificate of deposit to which he had never had title.

It does appear from the record that the issues submitted by the court to the jury were largely the same as they would have been if equitable relief had been prayed and the cause tried on the equity side. The court instructed the jury, in substance, that the plaintiff would be entitled to recover upon the certif-

icate against the Commercial Bank unless the Metropolitan Bank was a good-faith holder in due course, for value and without notice. Upon the issue thus submitted, the verdict of the jury was for the transferee, the Metropolitan Bank. The verdict having been set aside, upon plaintiff's motion, it is this defendant which has appealed. This brings us to a feature of the case which is the occasion of further confusion in the record.

II. The case was submitted to the jury on the theory that the certificate of deposit was a *negotiable* instrument, and that the Metropolitan Bank was entitled to no other protection than that afforded by the Negotiable Instrument Act.

3. BILLS AND NOTES: negotiability: payment "in current funds." This burden was laid upon the Metropolitan Bank by the instructions. After verdict, the plaintiff, by motion for judgment *non obstante*, and by motion for a new trial, raised the point that the instrument was *nonnegotiable*. This point was predicated upon the fact that the instrument was payable "in current funds." Under our decisions, it had been uniformly held, prior to the adoption of the Negotiable Instrument Act, that an instrument in this form was nonnegotiable. This was held in *Rindskoff v. Barrett*, 11 Iowa 172, and the holding reaffirmed in a half-dozen subsequent cases. This holding is not sustained by the numerical weight of authority in other jurisdictions. It is now contended by appellant that, in obedience to the spirit of the Negotiable Instrument Act, we should deem our former cases superseded, and should adapt our holding to the numerical weight of authority. As against this, it appears that, since the adoption of the Negotiable Instrument Act, we have twice referred to our former holding approvingly, though only by way of dictum. *Dille v. White*, 132 Iowa 327; *Park v. Best*, 176 Iowa 7.

We have no real occasion to wrestle with this question at this time. For the purpose of this appeal, we shall assume, without affirmatively holding, that the instrument in question is *nonnegotiable* in form. In sustaining the motion for a new trial, the ground of such ruling was not disclosed. However, the point made by plaintiff that the instrument was *nonnegotiable* in form was the only plausible ground appearing in the motion for such ruling. It is the only ground that merits discussion here. Taking the most favorable view of the pleadings

and of the evidence for the plaintiff, and assuming that the fraud of the Midland Packing Company was fully proved, and assuming that the plaintiff had a right to pursue the certificate into the hands of the transferee to the same extent as if he had invoked the equity jurisdiction and prayed equitable relief, was it essential to the protection of the Metropolitan Bank, as a bona-fide purchaser for value, without notice, that the instrument itself should be deemed *negotiable* in form? In other words, was it bound to rely only upon the protection. of 'the Negotiable Instruments Act, and to show itself to be a holder in due course within the meaning of that act? ·Manifestly not. The question is quite beside the mark. The effect of nonnego-· tiability of an instrument is to protect the *maker* of the instrument in his defenses thereto. . The maker of this instrument was the Commercial Bank. It had no defense thereto. It made none. The *plaintiff* had no interest in declaring this instrument nonnegotiable. Under no circumstances could he stand in the shoes of the *maker*. If a trust were impressed thereon in his favor, the effect of such a decree would be to make him the *payee* and holder. As such payee, he could have no interest in protecting the maker in his defenses.

As already indicated above, equity will not impress a constructive trust upon property that has passed .into the hands of a good-faith purchaser for value, without notice. Such a purchaser is regarded as equal, if not superior, in equity. ·Where the equities are equal as between two innocent parties, the one having the legal right and title will prevail. This is a broad principle in equity, which has a manifold application. It is not dependent for its operation upon recording acts or upon the Negotiable Instruments Act, although it be consonant therewith. It is older than both of these. It is as old as equity jurisprudence, and is fundamental therein. Plaintiff's contract with the wrongdoer was voidable—not void. When the Metropolitan Bank purchased this certificate, such contract had not been repudiated. Long before such repudiation, the right of the bank as a good-faith purchaser for value had fully vested. In such a case, equity regards the rights of the purchaser as complete in law, and not inferior in equity. The recognition of this. principle applies to every form of traceable property, whether it

be in the form of moneys or funds or accounts or other forms of credit. It is not affected by the form of the instrument which evidences the credit, whether negotiable or otherwise.

When equity has traced the original fruit of the fraud into the hands of an innocent purchaser for value, it then stops the chase as to the original property or fund. But in the interest of the injured party, it will still pursue the wrongdoer, and will identify in his hands, if possible, the product of the original or the substitute of such product, and will impress a trust thereon. And this product or substitute, if transferred by the wrongdoer, may likewise be traced and impressed with a trust in the hands of any third party who is not an innocent purchaser for value.

The jury necessarily found that the Metropolitan Bank was a good-faith purchaser for value, and without notice. Under the instructions given, the jury must have found even more. If the case were triable here *de novo,* we should have to find, upon the evidence, that the Metropolitan Bank was such a good-faith purchaser. The evidence in that respect is without any conflict, nor is it impeached by any circumstances. We must hold, therefore, that the fact of the nonnegotiability of the certificate is without controlling influence upon the rights of the parties.

The net result of our consideration of the case is that there was a mistrial, in the sense that the case was tried on an erroneous theory. Ordinarily, that would be abundant reason for justifying the court in granting a new trial. On 4. NEW TRIAL: grounds: erroneous trial theory. the other hand, the erroneous theory adopted in this case, so far as it could be prejudicial to him, was of the plaintiff's own choosing. The Metropolitan Bank, as holder of the certificate, was under no burden of invoking the equity jurisdiction. Its legal title to the certificate was complete and regular in form. No defense was made thereto by the issuing bank. In the absence of equitable interference, therefore, the certificate created the relation of debtor and creditor, as between the issuing bank and the holder; and in a law action, such holder was entitled to judgment thereon against the maker.

We do not overlook the plaintiff's claim that the indorsement of the certificate to the Metropolitan Bank was irregular

and ineffective, in that the signature of the Midland Packing
Company on the indorsement purported to have
been made by C. H. Burlingame, without any
official designation, and that there was no evi-
dence that such indorsement was made by any proper authority.
There are several reasons why this point is not available.

5. BILLS AND
NOTES: negoti-
ation: irregular
indorsement.

(1)    The point was not made when the indorsement was
put in evidence.  No objection was made to such indorsement.

(2)    The evidence of the plaintiff's own witness, Stokes,
disclosed that Burlingame *was* the secretary and treasurer of the
Midland Packing Company.

(3)    If the indorsement were wholly ignored, the oral evi-
dence shows the purchase of the certificate and the payment of
the purchase price by the present holder.

If the question of the negotiability were controlling, then
the irregularity, if any, in the indorsement might be fatal to
the negotiability.  But in view of our holding that the question
of negotiability is not controlling, the irregularity in the form
of the indorsement is not important.  It being shown that the
holder was a good-faith purchaser for value, without notice,
informality in the method of transfer will not change its char-
acter as such, even though it were a sufficient cause to destroy
negotiability.

III.  We come now to the categorical consideration of the
particular ground of reversal claimed on this appeal.  Did the
trial court err in sustaining plaintiff's motion to set aside the
verdict and to order a new trial?  It had a wide
discretion.  But it was a legal discretion, and
must be predicated upon the record.  If, for in-
stance, it had been essential to the case of the Metropolitan Bank
to sustain the negotiability of the certificate which it held, this
would have presented a cause for the exercise of the discretion
and the sustaining of the motion.  This doubtless *was* the cause
that operated upon the mind of the court.  But with the ques-
tion of negotiability reduced to a nonessential, there was nothing
else in the record which fairly justified the exercise of discretion
in favor of a new trial.

6. NEW TRIAL:
discretion: abuse
of discretion.

The result of our foregoing analysis of the case may be
briefly summed up as follows:

(1)   That the issues tendered by the plaintiff were actually submitted to the jury on the theory which he himself put forth.

(2)   That in such submission a greater burden was put upon the impleaded defendant Metropolitan Bank than was legally warranted, in that it was required to bring itself within the protection of the Negotiable Instruments Act.

(3)   That the verdict of the jury was necessarily predicated upon a finding that the impleaded defendant was a bona-fide purchaser of the certificate for value, and without notice.

(4)   That such finding not only was supported by sufficient evidence, but the evidence in support thereof was without conflict.

(5)   That the finding thus reached by the jury in its verdict was the same as a court of equity must have found, upon this record, if the case had been tried on the equity side.

(6)   That the fact, undisputed in this record, that the impleaded defendant was a good-faith purchaser for value, and without notice, was necessarily a complete bar, in any form of action, to the impressment of any trust upon the certificate in its hands.

Upon such a state of the record, what sufficient reason can be suggested why the same ground should be traversed again by a new trial?

We reach the conclusion that the impleaded defendant Metropolitan Bank was clearly entitled to judgment upon its certificate, and that it was error to set aside the verdict and grant a new trial. The order entered below is, therefore, reversed, and the cause is remanded for further proceedings consistent herewith.—*Reversed and remanded.*

PRESTON, C. J., ARTHUR and FAVILLE, JJ., concur.