R. B. MEAD, Appellant, v. CITY NATIONAL BANK OF CLINTON
et al., Appellees; MEAD AND RIGBY, Interveners,
Appellants.

No. 46123.

MARCH 9, 1943.

John D. Randall, of Cedar Rapids, for appellants.

Miller, Miller & Cousins, of Clinton, for City National Bank of Clinton, appellee.

Casterline & Son, of Tipton, and G. P. Linville, of Cedar Rapids, for Tipton State Bank of Tipton, appellee.

France & France, of Tipton, for C. L. Rigby and Charles L. Rigby as executor of the estate of Jennie B. Rigby, appellees.

HALE, J.— █ R. B. Mead, plaintiff herein, at the time of trial had been a resident of Manchester, Iowa, for about thirty days and previous to that time lived at Whitewood, South Dakota. E. L. Mead, defendant, and a member of the firm of Mead and Rigby, interveners, is the son of R. B. Mead. C. L. Rigby, or Charles L. Rigby, was the other member of the firm of Mead and Rigby and the husband of Jennie B. Rigby, who died after the transactions involved in this case took place and for whom Charles L. Rigby, executor, has been substituted. Rigby and wife lived on a 640-acre farm which was carried in the wife's name and was mortgaged for $53,000. Besides this, C. L. and Jennie Rigby were indebted to the City National Bank of Clinton and the Tipton State Bank and had given notes and mortgages securing such notes to the City National Bank of Clinton covering a large amount of hay and grain and growing crops and other personal property on the farm.

On August 27, 1934, C. L. Rigby and E. L. Mead executed a contract for the creation of what is called in the record a "partnership agreement," for the purchase, feeding, and sale of lambs, and dealing in livestock. Under this contract Rigby was to sell to the firm of Mead and Rigby 200 tons of soybean hay at $7 per ton, approximately 10,000 bushels of corn growing on the Rigby place, and some fodder, together with the use of feeding yards and some equipment. Mead was to arrange for the financing, purchase the lambs, superintend the feeding, and buy and sell livestock for the firm. The profits were to be divided, the first $100 a month going to Mead, the balance to defray expenses or be divided equally between Mead and Rigby, and all net profits to go one third to Rigby, one third to Mead, and one third to the company (Mead and Rigby) obligations.

Pursuant to this plan, and during the fall of 1934, the firm purchased about 2,700 head of lambs from plaintiff to be taken to the Rigby farm; some cattle were also purchased from plaintiff and others but were not taken to the farm. Drafts drawn by plaintiff accompanied each shipment of lambs and all drafts so drawn were paid by defendant C. L. Rigby, who, in order to finance such payments, made loans at the banks and paid part of such loans from his own personal account.

About September 15, 1934, in order to take care of the temporary loans made Rigby, he and his partner, Mead, agreed that they would negotiate a loan with the National Livestock Credit Corporation of St. Louis, Missouri, at their Chicago office, and it is claimed that it was agreed between them that this loan from the credit corporation should be made in the name of Jennie B. Rigby. In order to obtain such loan, the City National Bank, which held the mortgage on the feed on the premises, and the Tipton State Bank, had to execute subordination agreements, which placed the National Livestock Credit Corporation mortgage in first place; but the agreement, which was later carried out, provided that to protect the local banks a new mortgage would be executed by Mrs. Rigby and her husband in place of the original chattel mortgages to the City National Bank to secure the indebtedness of the Rigbys to both banks. E. L. Mead, one of the partners, stated that he knew of this additional mortgage before it was executed, receiving the information from Rigby and also from Anderson, president of the Tipton State Bank.

Plaintiff claims, and so testified, that a note for $3,043.20 given by C. L. Rigby and E. L. Mead to him was for the balance due on the lambs. C. L. Rigby, however, testified that the sheep drafts were drawn against him and paid by him personally, and that said note was to take care of a shortage on a draft that had been drawn on the E. L. Mead cattle account in the Union Trust & Savings Bank, that there were no drafts drawn on C. L. Rigby, Mead and Rigby, or E. L. Mead for the sheep which were not paid in the fall of 1934, and that all the drafts for the 2,700 head of lambs fed on the Rigby farm were paid. We are inclined to this view. The note referred to, which one alleges is a cattle note and the other for the balance on the lambs, was afterward, on April 5, 1937, put in judgment in the amount of $3,627.21 against E. L. Mead and C. L. Rigby individually and not against the partnership of Mead and Rigby. We refer to this action later.

Prior to April 10, 1935, it is claimed by defendant banks that neither had any knowledge of any feeding agreement as to the lambs or that E. L. Mead had any interest in them, but on said April 10, 1935, under the mortgage of the City National Bank,

which was executed following the subordination agreement and the then paid National Livestock Credit Corporation mortgage, the remaining 600 or 700 lambs were taken into possession by the sheriff for the City National Bank and sold. It was after that time that plaintiff obtained his judgment, which it is claimed was on the note said to be in payment of cattle.

On April 10, 1935, E. L. Mead brought a partnership-accounting suit against C. L. Rigby and Jennie Rigby. In that action the court found there were no profits, but instead, a loss of $1,200, and that there was nothing due E. L. Mead from the partnership or from Rigby. Practically all of the $1,200 loss, with the exception of about $110, was paid by Mr. and Mrs. Rigby.

The foregoing are the main facts concerning the transactions between the parties hereto.

In the petition in the present action the relief asked is that plaintiff be held entitled to an accounting, that he is entitled to the finding of a constructive trust for his benefit, and to a marshaling of assets, as well as for general equitable relief. All defendants (except E. L. Mead) deny any such rights under the facts of the case. E. L. Mead, on behalf of himself, and, as claimed by him, on behalf of Mead and Rigby, joined with plaintiff and asked that the relief prayed for by plaintiff be granted. On hearing, the district court found against plaintiff, referring in the opinion to the accounting suit between the partners, and held that the claim of a creditor of individual partners could not be greater than that of either partner, and since neither partner had any interest in the partnership, which operated at a loss, no partnership property remained with which a creditor could satisfy his claim against a partner. The court further held that the note in judgment was given for cattle, not for the lambs, and referred to the fact that the testimony of E. L. Mead, nominally a defendant but who actually joined with the plaintiff, was that of an impeached witness and improbable. This is an equity case and as such triable de novo; and an examination of the record inclines us to the court's view of the evidence.

I. As to his claim for an accounting, plaintiff argues

that partnership property should be applied to the payment of partnership debts, and an individual partner cannot, without his partner's consent, apply partnership property to the payment of his individual debts. Defendants do not dispute this general rule. In applying it here, we find that R. B. Mead was not a judgment creditor of the partnership. In the action heretofore referred to, in which, on April 5, 1937, judgment was entered against Rigby and E. L. Mead individually, there is a recital that it was for a partnership indebtedness, but plaintiff therein brought suit only against the individuals and judgment was so rendered against them. There was no judgment against the partnership. And in the accounting case, which was conclusive between the partners, it was established that the adventure resulted in a loss of about $1,200. It is our opinion that the claim which plaintiff, as a judgment creditor of the individual partners, had, could be no greater than the interest which either of such partners had in the partnership assets.

The fact that plaintiff has a judgment against the individual members of a partnership would not operate to give him a lien, either legal or equitable, against the partnership property. A firm creditor has no specific lien. See Bankers Trust Co. v. Knee, 222 Iowa 988, 270 N. W. 438; Lansing v. Bever Land Co., 158 Iowa 693, 138 N. W. 833, and cases cited therein. See, also, First National Bank v. Brubaker, 128 Iowa 587, 105 N. W. 116, 2 L. R. A., N. S., 256, 111 Am. St. Rep. 209, and cases cited; Stout v. Fortner, 7 (Clarke) Iowa 183. None of the cases cited by plaintiff support his theory.

II. Plaintiff asks that a constructive trust be established on sufficient of the receipts from the sale of the lambs by the banks to pay his judgment against the partnership in full, the right to which trust is denied by defendants for the reason that plaintiff had neither an equitable lien nor claim to any of the property covered by the mortgage, and, no confidential relationship having existed between mortgagors and the banks, he is not entitled to have established a constructive trust as to the proceeds of the sale. We do not agree with plaintiff's claim that the facts herein constitute such constructive trust.

"Constructive trusts have been said to arise through the application of the doctrine of equitable estoppel, or under the broad doctrine that equity regards and treats as done what in good conscience ought to be done." 65 C. J. 454, section 215.

Fraud, actual or constructive, is an essential element in the creation or existence of a constructive trust. Farrell v. Wallace, 161 Iowa 528, 143 N. W. 488.

We find no such evidence of fraud, either actual or constructive, as would give rise to such a trust, nor such circumstances as would render it inequitable for defendants to hold title.

Plaintiff cites in support of his argument, Eliason v. Stephens, 216 Iowa 601, 246 N. W. 771; Frink v. Commercial Bank of Emmetsburg, 195 Iowa 1011, 191 N. W. 513; and Hermann v. Hermann, 193 Iowa 1201, 188 N. W. 806. Other than the statement of general rules as to constructive trusts, none of these cases support his argument.

III. Plaintiff invokes the doctrine of marshaling of assets. Under the facts herein we do not see how this doctrine can apply. As stated, plaintiff had no lien on the lambs but there was a mortgage thereon held by the Clinton bank. Plaintiff was only a general creditor of the individual members of the partnership and as such would have no standing in equity to call to his aid the remedy of marshaling.

"The rule as to marshaling assets operates in favor of a creditor as against the debtor. It is not intended to deprive any secured creditor of the benefit of his security so far as it may be necessary for his protection." Bank of Defiance v. Ryan, 144 Iowa 725, 734, 123 N. W. 940, 943.

Plaintiff's argument is largely based on his construction of what the facts are claimed to hold. The record is too long to set out the evidence in detail, but an examination of the same convinces us that plaintiff had no equitable ground for marshaling of assets. He argues that courts of equity will prevent a private lienholder's power from being made an instrument of caprice, injustice, or imposition. From what we have heretofore said of our view of the testimony it is evident that there is no sup-

port for any claim that such a condition here exists. As a general rule, the proceeds from the sale of partnership property are applied first upon the lien of first priority and general creditors must await the satisfaction of such lien. Plaintiff had no lien against the lambs, and he has no right to have his judgment satisfied from the partnership funds except insofar as the interests of the individual partners might be concerned, which is shown to be nothing. Marshaling of assets applies when the lienholder may satisfy his lien out of more than one fund, which is not the case here. There was no reason for the district court to grant any relief by way of marshaling.

We find no basis in the facts herein for an accounting, a constructive trust, or marshaling of assets. A careful reading of the testimony convinces us that the district court was right in its holding for defendants.

Appellants filed motion to strike appellees' denial of appellants' abstract of record and appellees' additional abstract. There is a similar motion by appellees to strike appellants' denial of appellees' amendment to appellants' abstract of record. The transcript of the testimony was certified to this court and it is unnecessary to refer further to these motions. They are both overruled. See Brien v. Davidson, 225 Iowa 595, 281 N. W. 150, 282 N. W. 480; Rance v. Gaddis, 226 Iowa 531, 284 N. W. 468; Tessman v. Tessman, 228 Iowa 1070, 291 N. W. 530.

It is our holding on the entire matter that the cause should be, and it is, affirmed.—Affirmed.

All JUSTICES concur.