GREENE v. DAY.

1. Contract: CONSTRUCTION. The rule that a contract should, if possible, be so construed as to harmonize and give effect to all its parts, applied to the facts of the present case.

2. —— CONFLICTING PROVISIONS. Where there are two agreements, executed at different times, in respect to the same subject, the second or latest one providing that the provisions of the first are to remain intact, the provisons of the second one must prevail in case of direct conflict with those of the first, as embodying the latest intention of the parties.

*Appeal from Winneshiek District Court.*

THURSDAY, JULY 25.

ON the 17th day of March, 1869, Lewis G. and Samuel Wheeler entered into a contract with the defendant, Clai-

bourn Day, for the sale to him of the undivided one-half of a certain two hundred and forty acres of land, the said defendant agreeing to pay therefor the sum of $4,000, " on the first day that a railroad is built and completed to the village of Decorah, in said Winneshiek county." It was further agreed that each party should bear an equal part of the expense of the survey of said land into town lots, and that defendant should take charge of the premises, make sale of the lots, and remit to said Wheelers their share of said sales, without charge, and that in case the said Day should fully and promptly pay the said sum of $4,000 at the time, and in the manner specified, the said Wheelers would thereafter, on demand, execute to him a warranty deed for the portion of said real estate by him purchased.

The contract further contains the following stipulation : " And it is further understood and agreed by and between the parties hereto, that unless a railroad is built and completed to said village of Decorah, in Winneshiek county, Iowa, within three years from the date of this instrument, then this instrument, and all its covenants shall be null and void."

On the 1st day of June, 1864, the said Wheelers, the defendant Day, and the plaintiff, George Greene, entered into a contract respecting the same lands, which contract refers to the agreement between the Wheelers and Day, and stipulates that the same " is to remain intact and unchanged by any thing in this instrument."

The said Wheelers and Day, in said instrument, agreed to convey to the McGregor Western Railroad Company twenty acres of said land for a depot and other purposes. The contract then proceeds as follows : " Also, the party of the second part (the Wheelers) and said Day, agree to grant the right of way through said lands upon which said company may locate their road to said depot grounds, and this contract is made upon the express condition that

the said railroad company shall construct and finish their railroad to the lands aforesaid, to wit, the twenty acres, on or before the 1st day of June, A. D. 1865, so that regular trains may be run from North McGregor to said grounds, and shall, also, erect upon said twenty acres a suitable freight and passenger depot, and erect, or cause to be erected thereon, a grain elevator of sufficient capacity to hold at least forty thousand bushels of grain.

Also, the party of the second part for themselves, and the said Day for himself, hereby agree to grant, sell and convey to the party of the first part (Greene) one-half of each of their undivided half interest in and to the remainder of said two hundred and forty acres of land, in consideration of $4,000 to be paid to them in manner as follows: The remaining two hundred and twenty acres, less said right of way, are to be platted and surveyed into lots, and out lots and streets, by said party of the first part, free of charge, to either of the other parties; and said C. Day is to act as agent in the sale and management of said lots, divided from, and located on, said lands, under the advice and direction of the parties hereto; and from the sales first made from any of said lots said party of the second part are to receive the sum of $2,000 from said George Greene's one-half interest in said lots; and, also, the said Day is to receive a further sum of $2,000 from the sales next arising from said Greene's interest, as aforesaid.

And it is also agreed and understood, by and between the parties hereto, that the parties of the second part, and the said C. Day, shall execute and convey to the party of the first part, perfect titles to the one undivided half of said lands, less said twenty acres, and less said right of way, * * * * as soon as the payments arising from the sales, as aforesaid, or otherwise, to the said Wheelers and the said Day, shall amount to $2,000, for each undivided quarter of said two hundred and forty acres, less the conveyances to said railroad company heretofore mentioned.

And it is further understood, by and between the parties hereto, that the title to all of said lands, less the said conveyances to said railroad company, on the terms above described, shall be and remain in the party of the second part, except so far as may be necessary to convey to purchasers of lots by other parties, until they shall have received from the first undivided sale of said lots the sum of $4,000, or from George Greene's one-half share of said sales of said lots the sum of $2,000, then the said second party and the said C. Day, agree to convey to said party of the first part, a perfect title to the undivided one-half of said two hundred and twenty acres, less said right of way. * * * * It is also stipulated, by and between the parties hereto, that all the agreements and covenants hereof shall be mutually binding on all the parties herein."

The petition alleges that the plaintiff has surveyed and platted a large portion of said land into town and out lots, and had the same acknowledged and recorded in said county without charge to either of the other parties, and that Day entered upon his duties as such agent, and has made numerous sales of said lots, and has received therefor large sums of money, to such an extent as, if rightfully applied, would entitle the plaintiff to a conveyance of all the interest in said lands acquired by said contract, and that he has wholly neglected and refused to render an account to said plaintiff of the sales of said lots, or for moneys, securities or other proceeds received by him, or of the extent or amount of such sales. The petition prays that the defendant be required to make a full account and statement of all such sales and the moneys and securities received therefor, and that the court will order such proceeds to be applied by defendant in satisfaction of the respective amounts due from plaintiff to said defendant and said Wheelers ; and the overplus, if any, to be paid over to said plaintiff, and that defendant be ordered to perform all other acts necessary for the proper distribution of

the assets, and settlement of the rights of the respective parties, etc.

A general demurrer to this petition was sustained. Plaintiff appeals.

*Samuel Murdock* and *John T. Stoneman* for the appellant.

*Noble, Hatch & Frese* and *L. Bullis* for the appellee.

DAY, J. — The demurrer is a general one, to wit: That the petition does not state facts sufficient to constitute a cause of action, and that it states facts which avoid the cause of action. In argument, it is urged that the petition is defective, in that it does not aver that the railroad was completed to said lands, and a suitable passenger depot and grain elevator erected thereon by the first day of January, 1865, nor that the railroad was completed to the village of Decorah, within three years from the date of the first agreement. It is urged that these things are conditions precedent, and that a performance of all of them, within the time stipulated, is essential to the plaintiff's right to maintain this action.

The only question which this case presents, is one of construction of the agreements above referred to.

I. The stipulation respecting the construction of a railroad to said lands, and the erection of a depot and grain **1. CONTRACT:** elevator thereon, by the first day of January, **construction.** 1865, is found only in the second agreement made between plaintiff, the Wheelers and Day. In this contract, the Wheelers and Day agree to convey to the McGregor Western Railroad Company twenty acres of said land for a depot and other purposes, and the right of way through said lands, upon which said company may locate their road to said depot grounds.

The agreement then contains the following stipulation:

" This contract is made upon the express condition that the said railroad company shall construct and finish their railroad to the lands aforesaid, to wit: The twenty acres, on or before the first day of June, A. D. 1865, * * * and shall also erect upon said twenty acres a suitable freight and passenger depot, and erect or cause to be erected thereon a grain elevator of sufficient capacity to hold, at least, forty thousand bushels of grain."

Now, while the words *this contract*, and what follows, may, to the casual reader appear to apply to the entire agreement, so as to make it all to depend upon the performance of these conditions, yet, a close analysis of the contract will discover that this phrase can apply only to what immediately precedes, to wit, the agreement to convey depot grounds and right of way. It is one of the canons of interpretation that an agreement is to be so construed, if possible, as to give effect to all its parts.

The subsequent part of the contract provides, that the plaintiff shall cause said lands to be surveyed and platted into lots and outlots; that Day shall act as agent for the sale and management of the same, and that, from the sales made, the Wheelers are to receive from Greene one-half interest the sum of $2,000, and Day in the same manner a like sum.

The contract further provides as follows: " It is also agreed and understood by and between the parties hereto, that the parties of the second part, and the said C. Day, shall execute and convey to the party of the first part, perfect titles to the undivided one-half of said lands, * * * as soon as the payments arising from the sales aforesaid, or otherwise, to the said Wheelers and the said Day, shall amount to $2,000, for each undivided quarter of said two hundred and forty acres." * * *

The condition here imposed, upon which the plaintiff shall be entitled to an entire completion of the agreement, by conveyances from Day and the Wheelers, is that enough

of said lots shall be sold to pay the said Wheelers and Day, from the plaintiff's interest therein, the contract price.

And, as no restriction is placed upon the time of commencing sales, it is apparent that enough lots might be sold to entitle plaintiff to conveyances long before the expiration of the period for building said railroad to the depot grounds, and erecting thereon the elevator and depot.

Hence, if the phrase, "*this contract*," and what follows, applies to the entire agreement, we have one portion of the contract which entitles plaintiff to an immediate conveyance, and another portion which inhibits such conveyance until the performance of certain conditions precedent. We must, therefore, discard this construction, and limit the above stipulation to the agreement respecting depot grounds and right of way, thus giving effect to, and harmonizing all portions of the contract. The conditions of the first contract, upon which the Wheelers are to convey to Day, are not carried into the second contract, and made conditions upon which the Wheelers are to convey to the plaintiff. It follows that, if the defendant Day has sold enough of the lots to pay the Wheelers from Greene's interest therein the sum of $2,000, the plaintiff is entitled to a conveyance from the Wheelers.

And, if the defendant has sold more than enough to pay the Wheelers from plaintiffs one undivided fourth interest, he holds the same in trust for plaintiff, he ought to be held to account for the sales made on behalf of the fourth interest, purchased by plaintiff from the Wheelers.

To this extent, it is clear to us that the petition states facts sufficient to constitute a cause of action, and that the demurrer was improperly sustained.

II. The agreement between the Wheelers and Day, contains the following stipulation : "And it is further under-
2. —— conflict- stood and agreed by and between the parties
ing provisions. hereto, that unless a railroad is built and completed to said village of Decorah, in Winneshiek county,

Iowa, within three years from the date of this instrument, then this instrument and all its covenants shall be null and void." In the subsequent contract of the Wheelers and Day with plaintiff, the said Wheelers stipulate that they are the owners of the lands which are made the basis of the contract, "subject to certain agreements of said party with one Claibourn Day, of said Decorah, whereby said party agreed to convey to said Day the undivided one half part of said lands, upon certain conditions, for the sum of $4,000, which contract is to remain intact and unchanged in any respect, by any thing in this instrument, to which the said Day hereby assents and agrees to become a party." If this is construed in its broad and general sense, the two contracts are, in some of their parts, placed in direct antagonism to each other. The first contract provides that the Wheelers and Day shall bear equal portions of the expense of surveying said land into lots. The second agreement provides that Greene shall bear the expense of the survey of said lands. Now we apprehend all the parties to the agreements would admit that in this respect the first contract is, in fact, changed by the second. If the change of the first contract to this extent be admitted, then this provision of the second agreement amounts simply to this, that the first agreement shall remain intact and unchanged by any thing contained in the second, only in so far as the provisions of the two do not directly conflict. And, indeed, effect can be given to the two agreements, only by this construction. For a construction which would place the two contracts in opposition, would, render them incapable of execution. Further, in construing this provision, reference must be had to its position and connection in the contract. It will be observed that it occurs merely in that portion of the agreement in which the Wheelers refer to their ownership of the property, and, as qualifying their otherwise absolute ownership, refer to the existing contract with Day.

To render it apparent that they do not intend to ignore said contract with Day, they insert by way of recital that the same is to remain intact. In other words, Day is not to be divested of any rights pertaining to him under the first agreement, and, in so far as may be necessary to preserve those rights, the first contract is to remain intact. With this understanding, we are prepared to place a further construction upon the two agreements. The original contract provides that Day shall acquire no rights thereunder, unless a railroad is constructed to Decorah within three years. The second contract stipulates that Day shall convey to Greene an undivided one-fourth of said lands, when a certain amount thereof shall be sold, .which, as before said, may occur long before the expiration of the three years.

But Day cannot comply with this undertaking until he obtains title himself. The two agreements are thus placed in direct conflict. Both cannot be enforced. One must yield. But, as we have before seen, the first contract is to remain intact only in so far as it does not necessarily conflict with the second. When this conflict arises, the second agreement, as embodying the latest intention of the parties, must prevail.

It is evident that these contracts were drawn without sufficient regard to clearness and certainty, and hence their provisions, in other respects than those mentioned, are incongruous and apparently conflicting. It is believed that the foregoing construction effectuates the intention of the parties, does no violence to the language of the agreements, and is promotive of substantial justice.

It follows that defendant must render a full account of all the sales made.

It seems that the Wheelers should be made parties to this suit. But the demurrer does not raise the question of a defect of parties.

The demurrer was improperly sustained.

Reversed.