GLEN EDWARDS, Appellant, v. C. C. WAGNER et al., Appellees.

**CONTRACTS:** Mutual Construction. Principle reaffirmed that the
1 construction mutually placed upon a doubtful contract by the
parties thereto is all-persuasive with the court. So held where the
parties to a lease had, by their conduct, mutually construed a lease
as requiring the tenant to construct a levee at the expense of the
landlord.

**EVIDENCE:** Best Evidence Rule. Principle reaffirmed that, when a
2 contract is completely and plainly reduced to writing, all prior oral
agreements covering the reciprocal obligations of the parties are
inadmissible.

*Appeal from Monona District Court.*—W. G. SEARS, Judge.

June 25, 1921.

ACTION to recover damages to a wheat crop, caused by an
overflow of water due to an alleged failure on the part of defend-
ants to erect dikes on certain parts of their land leased to plain-
tiff. Upon the conclusion of the plaintiff's testimony, the court
sustained defendants' motion for a directed verdict, and entered
judgment against plaintiff for costs. Plaintiff appeals.—*Af-
firmed.*

*Prichard & Prichard,* for appellant.

*C. E. Underhill,* for appellees.

DE GRAFF, J.—Plaintiff was the tenant of the defendants
on the farm of the latter, under the terms of a written lease.
That part of the farm lease material to the issue in this case
reads as follows:

"First party [defendant] is also to build one half of fence
along the south side of said land sometime in the fall of 1918,
or spring of 1919, also to either help to grade the road one-half
mile to the east of said land, or to place a small levy [levee]
on the east, and south of said land, said second party [plaintiff]

is to look after getting men and machines to do said work of grading or levy [levee] work.''

It is contended by plaintiff that, in addition to the agreement in the written contract, there was an oral agreement as to the size of the dike and a provision for the employment of an engineer to establish a grade. The defendants admitted the execution of the lease, but allege that, after entering into the written lease, the wet weather prevented the construction of the dike; that, even had the dike been constructed, plaintiff would have been damaged to the same extent, as such dike would not have prevented the overflow, as said overflow was of an unusual and extraordinary character; and, as plaintiff was to have charge of said work, hire the men and machinery, and superintend its construction, it was the negligence of the plaintiff in failing to construct the levee or dike that was the proximate cause of the damage to plaintiff's crops.

The clear intent of the written lease is to construct a small levee on two portions of the defendant's land, and defendant was to pay for the cost of construction, and plaintiff was to have the superintendence of the work and do the work.

There was no attempt on the part of the defendant to prevent the construction of the levee, but it was desired by him at one time to have the road graded, rather than to have the levee constructed. This preference was communicated to plaintiff by letter; but it seems that no action could be secured through the road commissioners, and consequently plaintiff went ahead, on defendant's consent and request, with the construction of the levee.

In October, 1918, plaintiff employed a surveyor to set grade stakes and make survey for the levee. This was done. Plaintiff then employed practical graders to do the work. Complaint is made by the plaintiff that he was unable to get the defendant or the agent of the defendant to superintend the work, and this is one of the causes assigned by plaintiff for failure to have the levee constructed prior to the overflow in the following spring.

There is no merit in this claim, as the contract clearly implies that the plaintiff had full authority in the premises, and was authorized to superintend the work. Before the work was

completed by the grader, he was instructed by the plaintiff to leave the uncompleted job on the Wagner farm and proceed to the plaintiff's father's land, where he was to do some dike and ditch work. There is no question, under this record, that, had the grader been permitted to continue work on the defendant's farm, he could have completed the levee within a short time.

Plaintiff understood his part of the bargain. This is apparent. He engaged a surveyor to run the levels, set grade stakes, and make plans for the dike. He employed a Mr. Moon, with his grading outfit, to do the work. He also secured teams to do the finishing work. In his correspondence with the defendant, he understood that he was to look after the work. Defendant was a nonresident of the state, and, during all of this period, the parties had not personally met. We cannot escape the conclusion that the statements and the conduct of the plaintiff subsequent to the execution of the lease clearly indicate that the plaintiff construed the lease to mean just what the defendant claims.

The construction which the parties themselves place upon the contract must govern. It is well settled that, in all cases in which the terms of a contract are of doubtful construction, and it appears that the parties themselves have interpreted the contract, the courts will follow that practical construction. *Tooey v. Percival Co.*, 192 Iowa —, with cases cited.

The contract of lease in question is complete, and its terms are neither uncertain nor ambiguous; and the facts disclose that the plaintiff had in mind the real intent of the lease.

A written contract is a finality, and is presumed to embrace all of the agreements of the parties. We do not mean to exclude by this rule the attending circumstances and situation of the parties at the time the agreement was made, but the reciprocal obligations of the contract must be determined by the language of the contract itself. Under such circumstances, we cannot recognize a contract partly written and partly oral.

The defendants were as much interested, and even more so, than the plaintiff himself in the protection of the wheat crop. Defendants not only had a half interest in the crop, but, under the terms of the lease, had furnished all the seed wheat for the 170 acres, at $2.20 a bushel.

No reasonable excuse is offered by the plaintiff as to why the dike was not completed when the grader was on the ground, ready, willing, and able to finish the job. Many of the statements of plaintiff in explanation thereof are mere self-serving declarations. Plaintiff did not notify the defendant to come and superintend the work, nor did he inform the defendant that he had stopped the work on this levee or failed to complete it because the defendant or his agent had not come upon the scene to superintend the work or look after it.

If, as claimed by plaintiff, the weather conditions would not permit the completion of the levee, and the ground was too wet for such work, then the same reason may be as earnestly urged on behalf of the defendant as an excuse therefor. In fact, plaintiff wrote defendant that there was no chance to get the dike finished before next spring, as the ground was too wet.

We are not favorably impressed with the errors assigned by appellant, and, upon a careful consideration of the record, we conclude that the trial court correctly sustained the defendants' motion for a directed verdict. Wherefore, the judgment is—*Affirmed*.

EVANS, C. J., WEAVER and PRESTON, JJ., concur.