## W. D. OLESON v. JONAS E. BERGWELL.[1]

February 10, 1939.

No. 31,881.

[1]Reported in 283 N. W. 770.

*A. M. Bullis,* for appellant.
*Robert B. Gillespie,* for respondent.

JULIUS J. OLSON, JUSTICE.

Defendant appeals from an order overruling his general demurrer to plaintiff's complaint, the court having certified the questions presented thereby to be important and doubtful.

The action was brought to recover a claimed balance of $2,500 and interest upon a written contract, made and dated January 26, 1926. By the first paragraph thereof plaintiff's assignor as "party of the first part agrees to sell to the party of the second part [defendant] and the party of the second part agrees to buy from the party of the first part 94 shares of capital stock of the Oleson-Bergwell Hardware Company," par value $100 per share, "for the sum of" $7,000, $2,000 "of said sum" having been paid at the time of the making of the contract, and as to the remainder defendant "agrees to pay to the party of the first part" in ten annual installments of $500 each beginning with December 1, 1926, with interest on unpaid balances at five per cent per annum. The first five installments were duly met, as also were interest payments falling due from time to time. Thus defendant has paid upon the contract, as to principal, $4,500 in all; also interest at the contract rate to Septem-

ber 18, 1936. As the second paragraph is the subject of the present controversy, we quote the same in full:

"That it is understood by and between the parties hereto that the said 94 shares of capital stock of said corporation shall stand and remain on the books of the said company in the name of the party of the first part and that the transfer of the said stock shall be made to the party of the second part or to such person as he may direct only when the full purchase price of said stock with interest thereon has been paid. That until the said stock has been paid for in full this agreement and contract shall be deemed and considered by the parties as an option to purchase and in the event that the party of the second part fails to keep the covenants herein provided by him to be kept then all payments theretofore made under this contract shall be waived by the party of the second part as liquidated damages for the failure to perform the terms hereof and that upon such waiver and the intention of the first party so to declare after due notice being given to the party of the second part this contract shall then forthwith be terminated."

The third paragraph provides that "until the full purchase price" has been paid the owner of the stock reserved the right to "exercise all the privileges and rights of a stockholder" in the corporation Provision was made for prepayment in event defendant wished to pay any balance prior to maturity. The last sentence of that paragraph reads as follows:

"It is mutually covenanted by the parties hereto that this agreement shall bind their respective heirs and legal representatives and inure to their benefit."

There is no claim by either party that the contract does not fully express the exact agreement reached; nor is there any claim of fraud, deceit, overreaching, inadvertence, or other defect respecting it. Plaintiff has acquired vendor's interests and rights under the contract and in his complaint tenders performance upon defendant's payment of the remaining balance with interest since September 18, 1936, at the contract rate.

Defendant's contention is that because of the clause in paragraph two, hereinbefore quoted, providing that the agreement "shall be deemed and considered by the parties as an option to purchase," said agreement should be given such effect and that the plaintiff is therefore precluded from recovering anything.

If defendant's contention is accepted it would seem that the option was *ipso facto* terminated in December, 1931, that being the date when the sixth payment became due and was not met. It is interesting to note in this connection that the last payment of $100 was made upon the contract by defendant during the year 1937. That was an interest payment only. But if the contract was an option, then, strictly speaking, there could be no accrued interest, as the option would necessarily die and become of no effect the moment the option period expired.

That there is room for doubt respecting the intention of the parties as expressed in their writing seems obvious. But equally clear is the fact that they, by their conduct subsequent to its making, have put a practical construction upon it.

Upon careful reading of the second paragraph, the one upon which defendant so strongly relies, it will be found that its purpose was to provide the seller with the "option" of determining whether he would keep the payments "theretofore made" as "liquidated damages for the failure to perform the terms hereof and that upon such waiver and the intention of the first party so to declare after due notice being given to the party of the second part this contract shall then forthwith be terminated." Also of importance is the last sentence of paragraph three. By its terms the parties "bind their respective heirs and legal representatives" and that all rights thereunder should "inure to their benefit."

As we have seen, the second paragraph, if taken singly and alone, is at variance with the other and, we think, controlling portions of the contract. Our duty then is to seek a solution by taking into consideration and construing, not isolated clauses, but the instrument as a whole, to arrive at the intention of the parties. We are required to "take an instrument by its four corners in order to ascertain its meaning." 2 Dunnell, Minn. Dig. (2 ed. & Supps.)

§ 1823. Likewise, whenever "reasonably possible a contract should be so construed as to give it effect rather than to nullify it." *Id.* § 1822. And, "so far as reasonably possible a construction is to be avoided which would lead to absurd or unjust results." *Id.* § 1824. True, we are not permitted to so construe a contract as to avoid the chosen language used by the parties provided such language "is plain and unambiguous," in which event there is no room for construction. We are not permitted to, nor do we, "take liberties with unambiguous contractual language." *Id.* § 1817.

■ With these principles in mind, we may then take up for consideration the contract by "its four corners." Is this an option contract? An option has been defined as "an offer to sell coupled with an agreement to hold the offer open for acceptance for a specified time. * * * It secures the privilege to buy and is not of itself a purchase. The owner does not sell his property; he gives to another the right to buy at his election." 5 Dunnell, Minn. Dig. (2 ed. & Supps.) § 8500a; City of Minneapolis v. Republic Creosoting Co. 161 Minn. 178, 183, 201 N. W. 414; 12 Am. Jur., Contracts, § 27. The principal difference between a contract to sell and an option to purchase lies in the fact that, "while the former creates a mutual obligation on the part of one party to sell and on the other to purchase, the option merely gives the right to purchase, at a fixed price, within a limited time, without imposing any obligation to do so. There is a contract of sale and not a mere option where the vendor is bound to convey to the purchaser on the terms of the contract agreed on and the latter is bound to purchase, * * *." 66 C. J. p. 488 [§ 13], and cases cited under notes.

The court in its memorandum was of the view that "the scrivener thought that it was necessary to term the exhibit an option in order to forfeit the payments made in the event of default." We think the court was right. The word "option" is defined in Webster's New International Dictionary (2 ed.) 1937, as follows: "2. Power of choosing; the right of choice; an alternative." If the contract was intended as an option only why should any provision for notice of default on the part of the seller to the buyer be required in order to forfeit payments made as "liquidated dam-

ages"? If such it were the subsequent annual payments would be merely considerations for the extension of the option and not in reduction of the purchase money. Yet here all payments are to be applied upon the purchase price. Interest is made payable annually upon balances remaining unpaid from year to year. The seller retained the stock and was to remain in possession as a stockholder until the purchase money was paid in full. This language would be wholly unnecessary, meaningless, in fact, if the contract were a mere option. The right of holding the stock and receiving the advantages going with such ownership would clearly remain in the seller until the option ripened into an actual sale. And why did defendant enter into an agreement also to bind his heirs and representatives?

■ "The distinguishing characteristic of an option contract is that it imposes no binding obligation upon the person holding the option; and where there is not merely the right but the obligation to buy, the contract is not one of option, but of sale." 12 Am. Jur., Contracts, § 27; compare Libby v. Parry, 98 Minn. 366, 108 N. W. 299.

The following cases are helpful: Suburban Imp. Co. v. Scott Lbr. Co. (4 Cir.) 59 F. (2d) 711, 87 A. L. R. 555 (annotation at p. 563, et seq.); Williams v. Renza, 4 Alaska, 154; Chenoweth v. Butterfield, 11 Ariz. 315, 94 P. 1131; Ditzen v. Given, 139 Kan. 506, 32 P. (2d) 448; Gompert v. Frost, 188 Iowa, 1039, 177 N. W. 71.

■ Defendant argues with much emphasis that inasmuch as he has "paid $4,500 in principal and some $1,533 in interest, the forfeit or damages thus provided in case of failure or default, amounts to some over $6,000," therefore plaintiff should be "limited to the remedy" of keeping this sum as liquidated damages. Undoubtedly plaintiff could have done so, but he chose otherwise, a right reserved to him by the contract. If this were a suit brought by defendant to compel plaintiff to accept the unpaid balance and to go through with the bargain, what would the result be? Could plaintiff, absent as here the exercise of his choice to declare a forfeiture and give due notice thereof, defeat performance? We think not.

No court could so hold for by so doing it would not "give effect" to the contract but would effectively "nullify it," a result obviously "unjust." It seems clear that the principal purpose of this contract was to effectuate a sale. This was the "principal" objective and the "more important clause" in it, so the rule stated in 3 Williston, Contracts (Rev. ed.) § 624, p. 1796, should be applied. The author states:

"The true rule seems to be as stated in a Maine decision [Union Water Power Co. v. Lewiston, 101 Me. 564, 65 A. 67]:

" 'When one intention appears in one clause in an instrument, and a different, conflicting intention appears in another clause in the same instrument, that intention should be given effect which appears in the principal or more important clause.' "

The author under note 6 cites as sustaining the quotation in effect, Smith Stage Co. v. Eckert, 21 Ariz. 28, 184 P. 1001, 7 A. L. R. 995; Osburn v. Smart (Tex. Civ. App.) 58 S. W. (2d) 1073; see also Linde Dredging Co. v. Southwest L. E. Myers Co. (5 Cir.) 67 F. (2d) 969, 972.

We think the trial court was right, and its order is therefore affirmed.

