C. W. HUBBARD, appellant, v. J. B. MARSH, doing business as MARSH VENEER & LUMBER COMPANY, appellee.

No. 47491.

(Reported in 40 N.W. 2d 488)

JANUARY 10, 1950.

O'Connor, Thomas & O'Connor, of Dubuque, for appellant.

Kenline, Roedell, Hoffmann & Reynolds, of Dubuque, for appellee.

MULRONEY, J.—The issue on this appeal is the correctness of the trial court's construction of the contract consisting of the following letter from defendant to plaintiff, dated March 17, 1944 (for convenience we have supplied paragraph numbers):

1. "Dear Mr. Hubbard: Agreeable with our conversation in Indianapolis and Dubuque, I propose to give you the following Opportunity. This letter is written in duplicate and your acceptance will constitute an agreement.

2. "You will come to Dubuque and take charge of its log department. You will be responsible for all activities in that department, personnel and equipment. You will be responsible to no one but the undersigned, and we two will work hand and hand to formulate the logging program, changes in policy etc.

3. "It is fully understood that our greatest need at this time is prompt, proper, and efficient management of the logging department, but after you make good in that department, then I propose that you study the problems of other departments, and eventually qualify for efficient management in any and all departments, that should it become necessary, you could carry on successfully.

4. "You shall have a drawing account for personal use of $100 per week, plus traveling expense allowance. In addition to this weekly compensation, you will participate, on my option, in the net profits of the Marsh Veneer and Lumber Company, in both the Dubuque and Indianapolis operations. This participation will vary with the profits we realize and shall extend from 10% to 33%.

5. "To summarize, I propose to you to come into this business, which is well-established, and is earning a very satisfactory return, and take your chances in the postwar period, knowing full well, that if you help build, maintain and enlarge this business, that your personal income will be in direct ratio to the

company's earnings, and also in the event the sledding gets tough, that you are willing to make necessary personal adjustments downward to meet the prevailing condition. Then, in that event, I would like for you to sign on the dotted line, and return my copy at an early date.

6. "Assuring you that I feel we can work together in perfect agreement, and that our prospects to make very good money for several years, is most excellent, and with the best personal regard, I remain

Yours sincerely,<br>J. B. Marsh."

Endorsed on the letter is plaintiff's acceptance dated May 24, 1944.

By appropriate pleadings before trial the parties submitted the question of the construction of the contract to the court and the court ruled the contract was "full and complete in itself and unambiguous"; that the weekly compensation was clearly stated; that any participation by plaintiff in profits was at defendant's option; and that to permit oral evidence "would be to add to and specifically change the terms of the written agreement." It is now admitted this ruling disposed of the case, and plaintiff now appeals from the judgment dismissing his petition. For an earlier appeal, held to be interlocutory, see Hubbard v. Marsh, 239 Iowa 472, 32 N.W. 2d 67.

The plaintiff's appeal asserts the trial court erred (1) in not construing the contract as entitling plaintiff to at least ten per cent of the profits and (2) in construing the contract as unambiguous.

I. The question of whether a written contract is ambiguous or not is one of construction and interpretation. Ambiguity may be said to appear when after the application of pertinent rules of interpretation to the face of the instrument a genuine uncertainty results as to which one of two or more meanings is the proper one. Restatement of the Law, Contracts, sections 230 and 231; 17 C. J. S., Contracts, section 294.

Defendant's argument in support of the trial court's ruling is based entirely on a portion of the second sentence in the fourth paragraph: "you will participate, on my option, in the

net profits." Of course words in a contract are to be given their ordinary and natural meaning unless a contrary intent appears. Carson v. Great Lakes Pipe Line Co., 238 Iowa 50, 25 N.W. 2d 855. The above phrase, if standing alone, would perhaps compel the construction the trial court made—but the phrase does not stand alone. It is tied into other sentences in the same paragraph and it must be considered in the light of what the contract states in the fifth and sixth paragraphs.

We said in United States F. & G. Co. v. Iowa Tel. Co., 174 Iowa 476, 485, 156 N.W. 727, 729: "It is a well-settled rule of construction that the legal force and effect of a contract * * * are to be ascertained by taking into consideration the entire instrument in all its parts."

The fifth paragraph where the defendant seeks "to summarize" the entire agreement will not square with an interpretation of the language of the fourth paragraph, that plaintiff's participation was to be at defendant's option. In the fifth paragraph the defendant definitely states his proposition to plaintiff to be that plaintiff will "come into" the business and plaintiff is to know "full well" that if he helps "build, maintain and enlarge this business" his "personal income will be in direct ratio to the company's earnings." He certainly would not know full well that he would ever participate in the company's earnings under the defendant's interpretation of paragraph four. All that he would know full well would be that he would receive $100 a week drawing account. Here too the plaintiff is told that if "the sledding gets tough" he is to be "willing to make necessary personal adjustments downward." But if plaintiff was assured of his weekly drawing account and nothing more there would be no necessity for him to be willing to make a downward "adjustment."

The same thought of some participation in profits is carried into the sixth and last paragraph where the defendant expresses his feeling that they "can work together" and that their "prospects to make very good money for several years, is most excellent." How could plaintiff have "most excellent" prospects of making very good money if his only right under the contract was to receive the stated drawing account?

The sentence with the quoted phrase in the fourth paragraph

must be read as a whole and it must be read with the sentence that goes before and the sentence that follows it. The sentence starts with the words: "In addition to this weekly compensation"—plainly indicating the plaintiff is to receive something more than the $100 a week drawing account provided for in the preceding sentence. This is entirely consistent with the use of the phrase "drawing account for personal use." A drawing account cannot be said to be quite the same as a salary. The term rather denotes that some other method is to be used to determine the full compensation, and an advance drawing is to be allowed as against said compensation. In the field of commission salesmen the drawing account would probably mean an advance of a constant sum, weekly or monthly, against anticipated commissions. In Packard Motors Co. v. Tally, 212 Ala. 487, 489, 103 So. 455, 457, it is said: "A drawing account is a well-recognized modern business method of furnishing the employee with means of maintenance while engaged in the service from which wages or commissions are to accrue."

Here, the employment was not as a salesman and the drawing account cannot be said to be an advance, for the next sentence says the participation is to be "in addition" to the drawing account. But the fact that defendant used the term "drawing account" which carries the meaning of something more that will determine the full compensation; the fact that defendant said the drawing account was for "personal use" which might well mean maintenance until other anticipated compensation could be determined; and the fact that in the next sentence he says he will receive participation "in addition" to the drawing account, all would indicate that defendant was offering something more than $100 a week compensation. True, the defendant states plaintiff will participate "on my option," but in the last sentence of the paragraph he defines the optional participation for the purpose of this contract by stating: "this participation will vary with the profits we realize and shall extend from 10% to 33%." This fourth paragraph could well be construed to say, "you will have $100 a week drawing account and in addition optional participation in profits. The optional participation in profits means that the participation will at my option extend from 10% to 33%

depending upon the profits we realize." Such a construction would be consistent not only with the language in the fifth summarizing paragraph, but also with the use of the phrase "drawing account for personal use" and the other language of the fourth paragraph where the participation was to be "in addition" to the drawing account and the term "participation" was defined with a minimum and maximum range. There would clearly be no necessity of defining the optional participation or saying that it "shall extend from 10% to 33%" if any participation was to be at the mere whim of the defendant.

The trial court's interpretation gives no effect at all to the last sentence of the fourth paragraph: "This participation will vary with the profits we realize and *shall* extend from 10% to 33%." (Italics supplied.) We said in Nylander v. Nylander, 221 Iowa 1358, 1360, 268 N.W. 7, 8: "It is fundamental that all words used in written instruments must be given effect, if reasonably possible * * *."

 The force of the trial court's construction is that this sentence was entirely superfluous. Why would defendant take pains to state the range of participation in percentage figures if plaintiff was to receive no right of participation? Portions of construction rules set forth in 17 C. J. S., Contracts, section 586, page 1228, state: "* * * it is presumed that no words were used aimlessly and that no provision is superfluous unless plainly repetitious * * *. It will not be assumed that a sentence in a contract was to have no effect when it can have a reasonable intendment."

We do not think this contract speaks only of a promise to pay plaintiff a $100 a week drawing account. There are too many expressions in it which indicate the employee is to receive something more—all of which means the test of ambiguity has been met. The plaintiff's argument that the contract should properly be construed as he contends—entitling him to at least ten per cent of the profits—is quite persuasive but we hesitate to so rule at this stage of the proceedings, especially because plaintiff's petition asserts that there is an oral portion to his contract of employment.

It is our holding that the contract is ambiguous and the ruling of the trial court and the judgment based thereon are reversed.—Reversed.

BLISS, C. J., and OLIVER, GARFIELD and HAYS, JJ., concur.

MANTZ, HALE and WENNERSTRUM, JJ., dissent.

SMITH, J., takes no part.

MANTZ, J. (dissenting)—I respectfully dissent from the majority opinion. The opinion, in my judgment, misconstrues the contract sued upon, enlarges its terms, deals with matters not involved and appealed from, and avoids others which, in my opinion, are decisive in the case and which would support the ruling of the trial court. The majority opinion seems to discuss but one issue and that is the basis for the holding—the so-called ambiguity of the contract letter as set forth therein.

The majority opinion purports to set forth two grounds urged by plaintiff in his appeal. The grounds set forth are (1) the court erred in not construing the contract as entitling plaintiff to at least ten per cent of the profits and (2) in construing the contract as unambiguous. The majority opinion seems based upon ground (2) as set forth above and in so doing seems to assume that the compensation to plaintiff as there stated was not in fact the true compensation.

We call attention to the fact that plaintiff in his brief and argument set forth and argued two other errors: (3) "The court erred in holding that the contract of employment consists only of the written portion thereof" and (4) "the court erred in holding parol evidence would not be admitted to show part of the contract resting in parol or to explain ambiguity." The majority opinion ignores these two claimed errors.

Let us examine the pleadings. Paragraphs 3 and 5 of plaintiff's petition are as follows:

Paragraph 3. "That on or about the 24th day of May, 1944, plaintiff entered into an agreement, partly in writing and partly oral, whereby plaintiff was employed by defendant in the carrying on of his business; that the written portion of said agreement is contained in a letter of defendant to plaintiff dated March 17,

1944, copy of said letter being attached hereto, marked 'Exhibit A', and hereby made a part of this petition. The oral portion of said agreement is set out in Par. 5 of this petition."

Paragraph 5. "That it was mutually orally agreed and understood between the parties that plaintiff would participate in the profits of the company of defendant to the extent of at least 10% of such profits, but not to exceed 33%, the amount of participation by plaintiff in the profits of the business in excess of 10% and not to exceed 33% being at the option of defendant."

Thus he claims that the contract was partly in writing and partly oral, and contemporaneously entered into.

A mere casual examination will reveal that these two paragraphs are in conflict and repugnant to each other. Yet the majority opinion avoids passing upon the oral part thereof and merely refers to it by asserting that "The plaintiff's argument that the contract should properly be construed as he contends—entitling him to at least ten per cent of the profits—is quite persuasive but we hesitate to so rule at this stage of the proceedings, especially because plaintiff's petition asserts that there is an oral portion to his contract of employment." Yet we find plaintiff devoting a considerable part of his argument to the issues raised by these pleadings. The court specifically ruled that oral evidence was not admissible. To fail to pass upon the correctness of this matter is, in my opinion, to simply set up the grounds for another appeal, the present being the second one.

As to the discussion of the majority opinion as to the $100 per week simply being a drawing account, in a sense the language carries the impression or implication that this $100 per week is simply expense money. It seems to me it is not necessary to go beyond the written letter to show what was meant by the term "drawing account." The very next sentence speaks of this sum as "weekly compensation." The item of $100 per week has in the same sentence, "plus traveling expense." I do not find in plaintiff's brief or argument any claim that the $100 per week was anything other than compensation. He does not make any such claim in pleading, he does not argue it, so why pass upon it? Such a discussion is unnecessary and simply adds nothing. The citation, Packard Motors v. Tally, 212 Ala. 487, 103 So. 455, has no application. There the employee was working on commission

and was given a certain drawing account. The real issue there was whether such could be reached by garnishment. That court's definition of what was a drawing account as applied to the real issues involved was pure dictum.

It will be seen that paragraph 4 of said letter and paragraph 5 of plaintiff's petition, in part, refer to the same matter, to wit, the percentage of profits arising from the business. The letter designates the drawing account of plaintiff as $100 per week; also traveling expenses. Immediately there follows: "In addition to this weekly compensation, you will participate, *on my option*, in the net profits of the Marsh Veneer and Lumber Company, in both the Dubuque and Indianapolis operations." (Italics supplied.)

When we compare the above statement (as to the option) with that part of the claimed oral part of the contract, it can readily be seen that the latter conflicts with the former. Plaintiff argues that the written part of the agreement definitely obligated defendant to pay the designated wage, expense money, and in addition ten per cent of the profits of the business; and that no option was needed or required as to that per cent, but that the only place the option could be exercised by appellee was between said ten per cent and thirty-three per cent of the profits.

The trial court in its ruling held that the oral part pleaded was inconsistent with the written agreement pleaded and that "to permit oral evidence of the alleged oral contract would be to add to and specifically change the terms of the written agreement." Likewise, the court also found that there was no ambiguity in the written contract. I am of the opinion that the court was right in its ruling.

Plaintiff does not plead or argue that in the contract of employment between him and defendant there was any fraud or mistake. He simply claims that he entered into said employment by virtue of a contract—a part in writing and a part oral—contemporaneous with said writing. His claim simply relates to a share of the profits which he pleads and argues was promised under the contract as a whole.

Plaintiff in his petition states: "That pursuant to said agreement of the parties, plaintiff devoted his full time and attention

to defendant's business through all of the year 1944 and up to about December 1, 1946."

Plaintiff's right to compensation arises out of the contract between him and defendant. The trial court found that the only contract under which plaintiff could claim compensation was the writing of March 17, 1944, accepted by him on May 24, 1944. The court sustained the claim of defendant that such writing was the only contract between the parties. I think that the pleaded facts sustain such finding. The writing is clear and without ambiguity. It refers to prior negotiations, the nature of the employment, the part plaintiff was to carry on, the needs of the business, the objects sought to be attained, the co-operation between the parties, then follows a separate paragraph which definitely sets forth the compensation to which plaintiff was entitled and then immediately follows, "you will participate, *on my option*, in the net profits," etc. There is nothing uncertain or ambiguous in such paragraph. It fixes the weekly compensation and expenses and then specifically states that any participation in profits will be at the option of defendant.

It seems an idle waste of words to infer or presume that any man of any business sense or capabilities would be so unsophisticated as to claim or assert that he did not understand what the word "option" meant. It simply does not add up to make common sense and borders upon the absurd. It amounted to his closing his eyes to that word and the squinting at the prospect of future profits. *The effect of the majority opinion is to permit him to do so.*

An option means a privilege or right of election to exercise a privilege. Lively v. Tabor, 341 Mo. 352, 107 S.W. 2d 62, 111 A. L. R. 976; Hyatt v. Vinita Brass Works, 89 Okla. 171, 214 P. 706; right of election; alternative; Malone v. Meres, 91 Fla. 709, 109 So. 677; Levy v. Rothe, 17 Misc. 402, 39 N. Y. Supp. 1057; Suhre v. Busch, 343 Mo. 170, 120 S.W. 2d 47; Norwood v. Adams, Tex. Civ. App., 51 S.W. 2d 625. In the case of Myers v. Stone & Son, 128 Iowa 10, 102 N.W. 507, 111 Am. St. Rep. 180, 5 Ann. Cas. 912, it is held that an option is a personal privilege—the right to choose, etc. The word "option" is the power of choosing, the right of choice, an alternative. Oleson v. Bergwell, 204 Minn. 450, 283 N.W. 770. Option means choice—election. 3

Bouvier's Law Dict., Rawle's 3d Rev. 2421. Many other decisions approving the above rule might be cited. In the instant case "on my option" simply meant the right, choice or privilege of defendant to give to plaintiff a share in the profits of the business. Defendant had an absolute right to grant or refuse and it can hardly be said that his refusal can be legally questioned.

Plaintiff did not sign the written offer for over two months after it was sent him. He had ample time to examine and study it and can hardly claim that he was misled or overreached. He did not plead ambiguity; he raised it by argument.

Where a contract is complete and its terms are neither ambiguous nor uncertain parol evidence to explain it is inadmissible. Rath v. Schoon, 192 Iowa 180, 182 N.W. 180; Seibel v. Commonwealth Life Ins. Co., 194 Iowa 701, 190 N.W. 173; Comptograph Co. v. Burroughs Adding Machine Co., 179 Iowa 83, 159 N.W. 465; Weitz Sons v. United States F. & G. Co., 206 Iowa 1025, 219 N.W. 411. In Heiple v. Reinhart, 100 Iowa 525, 528, 69 N.W. 871, 872, we said:

"It is an elementary rule of construction, that all parts of a written contract must be construed together, and force and effect given to each, where that is practicable. The intent of the parties to a contract is ordinarily determined by the language they use, and, if that is definite, certain, and complete, it must control." Citing Emerick v. Clemens, 26 Iowa 332, 335; Greene v. Day, 34 Iowa 328, 333.

See also Nylander v. Nylander, 221 Iowa 1358, 268 N.W. 7; Hardy v. Hardy, Cal. App., 135 P. 2d 615; State Bank of Wilbur v. Phillips, 11 Wash. 2d 483, 119 P. 2d 664; Morgan v. Wheeler, 150 Kan. 667, 95 P. 2d 320.

In the absence of mistake or fraud a written contract merges all prior and contemporaneous negotiations in reference to the same subject and the whole engagement of the parties and the extent and manner of their undertaking are embraced in the writing. All verbal agreements made at or before the time of the execution of a contract are to be considered as merged in the written instrument. 12 Am. Jur., Contracts, section 232, page 756; Farrell v. Wallace, 161 Iowa 528, 143 N.W. 488; Hanley v. Chicago, M. & St. P. R. Co., 154 Iowa 60, 134 N.W. 417.

Ambiguity is doubtfulness—doubleness in meaning. Chap-

man v. Metropolitan Life Ins. Co., 172 S. C. 250, 173 S. E. 801. Ambiguity is an uncertainty of meaning in the terms of a written instrument. First National Bk. v. Hancock Warehouse Co., 142 Ga. 99, 82 S.E. 481; Business Men's Assurance Assn. v. Read, Tex. Civ. App., 48 S.W. 2d 678; Caldwell v. State, 115 Ohio St. 458, 154 N.E. 792; Wheelwright v. Pure Milk Assn., 208 Wis. 40, 240 N.W. 769; Arkansas Amusement Corp. v. Kempner, 8 Cir., Ark., 57 F. 2d 466; 3 C. J. S., Ambiguity, 1034. Ambiguity is duplicity, indistinctness or uncertainty of meaning in a written instrument. 1 Bouvier's Law Dict., Rawle's 3d Rev. 186. A contract is ambiguous when the meaning cannot be ascertained within the four corners. Miller Cattle Co. v. Francis, 38 Ariz. 197, 298 P. 631. We can see nothing doubtful or uncertain in the written contract. The oral part pleaded would add to it something contrary to its terms.

Plaintiff argues that under his plea the contract was partly oral and partly written, and that evidence would be admissible to show such oral part. He argues that oral evidence is necessary to explain the language of the written part; also to establish the oral part.

This court has had such an issue before it many times. I will call attention to some additional holdings of this court wherein the issue as to the validity of such claimed contracts was considered where there were contradictions and conflicts between the written and the claimed oral parts, where the same were contemporaneously executed.

It is a well-settled rule that parol evidence is not admissible to vary the terms of a written contract. Kelly v. Chicago, M. & St. P. Ry. Co., 93 Iowa 436, 61 N.W. 957; Lerch v. Sioux City Times Co., 91 Iowa 750, 60 N.W. 611; Miller v. Morine, 167 Iowa 287, 149 N.W. 229; Blackledge v. Puncture Proof Retread Co., 190 Iowa 1303, 1307, 181 N.W. 662, 663. In the last-cited case there was a written contract and petitioner claimed that at the same time there was a contemporaneous agreement. Evidence offered to support the oral contract was held inadmissible. In the opinion, by Chief Justice Evans, it was said:

"While it is true, as an abstract proposition of law, that an independent oral contract may be entered into between the parties to a written contract, and contemporaneously therewith,

it is also true that such oral contract must be independent in fact, and must not be a contradiction, modification, or qualification of the written contract, either as to its enforcement, its consideration, or its executory obligation. We deem it very clear, in the case before us, that the oral contract relied on by plaintiff did affect the consideration for the contract in an overwhelming sense. It was, in material respects, contradictory thereto. It is argued by plaintiff that the exclusion of these agreements operates as a fraud upon the plaintiff. But the plaintiff had its privilege to plead the fraud. If the oral agreements and representations pleaded by plaintiff were made fraudulently, there was no impediment in any rule of evidence to plaintiff's proof of the same, upon appropriate allegations. We think the ruling of the trial court in this regard was clearly correct."

In In re Estate of Simplot, 215 Iowa 578, 581, 246 N.W. 396, 397, this court considered the matter of the admission of evidence to support an oral agreement which was claimed to have been contemporaneous with a written agreement. Therein Justice Evans discussed such matter and set out what were termed the "exceptions" to the rule excluding evidence by which it was sought to show said contemporaneous oral agreement. Briefly, there was a will contest. It was finally settled by the defendant paying to plaintiff a certain sum, and in a written stipulation it was agreed that the matter involved was fully settled. Later, suit was brought against the estate of the defendant in the stipulation claiming that at the time such stipulation was entered into there was an oral agreement that such stipulating defendant would execute a will making the other stipulating party a beneficiary thereunder. Objections were made to the evidence offered to sustain such claimed oral agreement. Such objections were sustained and on appeal the plaintiff-appellant in argument said, " 'The only question before this court for review is whether or not the offered [parol] evidence tends to vary or contradict the terms of the written instrument, which is claimed to be a full and complete contract.' "

The opinion is exhaustive and the exceptions to said oral evidence were set forth in detail. Said exceptions were seven in number and each was separately discussed and authorities referred to. Said opinion cites in its support, Miller v. Morine,

supra; Canfield Lbr. Co. v. Kint Lbr. Co., 148 Iowa 207, 127 N.W. 70; Taylor v. Galland, 3 (G. Greene) Iowa 17; Edwards v. Wagner, 191 Iowa 822, 183 N.W. 450; Kelly v. Chicago, M. & St. P. Ry. Co., supra; Jessup v. Chicago & N.W. R. Co., 99 Iowa 189, 68 N.W. 673. I think that the record and reasoning in the cited case has direct application to the instant case.

In the cited case of Miller v. Morine, supra, the court said at page 289 of 167 Iowa, page 230 of 149 N.W.:

"The one question in the case, however, is, Was it competent for the defendant to prove the alleged oral agreement or promise of the plaintiff, and thus ingraft it upon the written lease?" Immediately following this the court held: "Parol evidence is not admissible to vary the terms of a written instrument. Thus where a written lease was free from ambiguity and recited that in consideration of the rental to be paid the lessor was to perform certain covenants, evidence of a parol agreement that the lessor for the same consideration was to perform a different covenant not expressed in the writing was not admissible." (Page 287 of 167 Iowa.)

In the instant case, we have a written agreement which shows on its face that it was the result of conference and discussion between Hubbard and Marsh. The trial court held that such contract was full and complete upon its face and free from ambiguity. I believe the trial court was right.

Plaintiff seems to argue that the compensation, $5200 per year, borders on the field of being nominal. I do not so regard it. It was something he elected to take, and taking into consideration the time elapsing between the offer and the acceptance, he had ample time to think it over. In the paragraph relating to the compensation it was set forth that he might receive additional compensation at the option of defendant—he to participate in the profits of the concern. A careful reading of the letter reveals that defendant could or would exercise the option, depending upon the performance of the duties by plaintiff. The pleadings of defendant deny that plaintiff made good—it is averred that he caused losses to the business. The letter clearly states what plaintiff was to receive in case defendant exercised his option to permit him to share in the profits. It can hardly be said that the

matter of plaintiff's compensation as set forth in the written contract and that as claimed in the oral contemporaneous agreement are harmonious and not in conflict.

The written contract was the result of conversations in Indianapolis and Dubuque. The first paragraph of the contract so states. Possibly there were later conferences—the record is silent on that point. The law presumes that the parties reduced their contract into the writing. 12 Am. Jur., Contracts, section 232, page 756, states: "All verbal agreements made at or before the time of the execution of a contract are to be considered as merged in the written instrument." See also 17 C. J. S., Contracts, 750, 751; Jacobsen v. Moss, 221 Iowa 1342, 268 N.W. 162; Slump v. Blain, 177 Iowa 239, 158 N.W. 491. In the Jacobsen case heretofore cited it was held that where a contract was reduced to writing it was considered a merger of all of the matters involved in the contract. See also Seeger v. Manifold, 210 Iowa 683, 231 N.W. 479; Jones v. Sargent, 193 Iowa 1256, 188 N.W. 818; Banwart v. Shullenburg, 190 Iowa 418, 180 N.W. 190.

If the contention of the plaintiff in the instant case be sustained then such a rule would put oral evidence upon a parity with the written contract, and no written contract would be immune against said oral contradiction. See also Parks & Co. v. Howard Hotel Realty Co., 200 Iowa 479, 203 N.W. 247. The opinion, by Justice Faville, cites many of the cases heretofore set forth to sustain the rule above set forth, holding that in the absence of fraud, mistake or ambiguity, oral evidence is not admissible to show another and different contract—one which by its very terms contradicts the written contract.

Plaintiff states in his argument that the written contract standing by itself entitles him to at least ten per cent of the profits. For what period of time? Note his inconsistency. Then why the pleadings of the oral contract? It is rather significant that on July 28, 1947, Judge Chalmers made the ruling of which plaintiff complains. However, we find plaintiff filing a reply to defendant's answer on February 17, 1949. All of this would indicate that plaintiff was confused and uncertain as to his proper position in the matter.

I have no quarrel with the general principles laid down in most of the cases cited in the majority opinion. I deny their ap-

plication to the pleaded facts in this case. The letter written March 17, 1944, followed conversations and conferences both in Indianapolis and Dubuque, at both of which places defendant conducted his business. It must be presumed that at such times the various matters pertaining to and dealing with the contemplated employment were thoroughly gone into and discussed. However, the letter shows that there was no binding agreement arrived at, for in the first paragraph of the letter we find the defendant saying: "I propose to give you the following opportunity." The letter was written from one businessman to another and it is reasonable to assume that plaintiff was no novice in business affairs. Here was an offer made and over two months later it was accepted. Under it plaintiff worked two and one-half years, doubtless being paid regularly, and it was not until after he left that employment that any claim was made for a share in the profits. Apparently dates meant little to plaintiff, in view of his pleading that he worked all of 1944, when as a matter of fact he could not have been so employed for at least five months of that period. In the offer, standing out crystal-clear, was the statement as to what plaintiff was to be paid and at the same time it was clearly and unequivocally stated that any further compensation will be *"on my option."* Plaintiff was not required to accept—he had the alternatives of negotiating further or of refusing to sign. He could have asked for a clarification in order that the point be made fixed or certain. The majority opinion seeks to tie into the statement other parts of the letter. In my judgment, those things included in the letter merely advised plaintiff what defendant might do by way of additional compensation in case defendant felt that he was entitled to more. Boiled down, it would be akin to an offer to an employee by the prospective employer, after telling the former what was expected, then saying, "I'll pay you $5 per day and if I am satisfied with your work and convinced you are entitled to more I'll pay you $7.50 per day." It all goes back to what the employer felt like doing after the arrangement had been tried out. Defendant's answer was that defendant was not satisfied with plaintiff's work and that under his management log shortages of about 120,000 feet showed up and an inspector had to be sent to inspect logs in the place of plaintiff; also, plaintiff's absences and his neglect of

his duties. Upon a study of the letter of March 17, 1944, and paragraph 2 thereof it will be noted that the specific duty of plaintiff was to "take charge of its log department." While the exercise of the option was a privilege of the defendant, yet here you have in his pleading a specific ground why, how and where the plaintiff was falling down on the job. A sane and sensible view of the whole situation would be that defendant could exercise the option privilege as he saw fit. Plaintiff claimed that he carried on his work for defendant for close to two and one-half years but nowhere asserts that he ever laid claim to any of the profits until he left the employment. As I view the effect of the majority opinion it simply opens the way for plaintiff to avail himself of an opportunity to go forth and litigate with the expectation of getting something for nothing. I, for one, am unwilling to afford him that opportunity. I assert that the pleaded facts and the law are against him. I would affirm.

HALE and WENNERSTRUM, JJ., join in this dissent.